SAM'L M. WARD et als. v. CHAS. T. LOWNDES et als.

*Sale of Land for Assets—Irregular Judgments—Infants—
Guardians at litem—Fraud.*

1. Where a Special Proceeding was brought to sell land for assets, in pursuance of orders in which the land was sold, but on account of grave irregularities in this proceeding, another was brought with the consent of the administrator and purchaser, to which the heirs were parties; *It was held*, that such second proceeding was sufficient to cure the irregularities in the first, and none of the parties thereto could be heard to complain of it.

2. Where proceedings were brought before the Probate Judge which should have been brought before the Clerk, and *vice versa*, the irregularity is cured by the statute (Bat. Rev., ch. 17, §§ 425, 426).

3. Infants may sue or be sued and are as much bound by the judgment as persons *sui juris*, but infants must sue by a next friend or guardian, and defend actions against them by a regular guardian, or if they have none in this State, by a guardian *ad litem*.

4. The provisions of the statute in regard to the appointment of guardians *ad litem* should be strictly observed, but mere irregularities in observing them, not affecting a substantial right, will not vitiate judgments and decrees obtained in the action or proceeding in which such irregularities exist.

5. Courts obtain jurisdiction over infant defendants over fourteen years old exactly in the same manner in which they do over adults, but if the infant is under fourteen, besides serving them personally and leaving a copy with them, a copy of the summons must also be delivered to the father, mother, or guardian, or if there is none in this State, then to the person who has the care and control of the infant, and in the case of non-resident infants, by publication as in other cases.

6. The judgments and decrees of a Court which has jurisdiction, although erroneous or irregular, cannot be attacked in a collateral proceeding. If erroneous, they must be corrected by appeal; if irregular, they must be set aside by a motion in the cause, made in a reasonable time.

7. The facts that the administrator who sold the land for assets was the law partner of the counsel who conducted the proceeding; that many of the orders in the proceeding were in the handwriting of the administrator; that the answer of the guardian *ad litem* was also in his handwriting, it appearing that the guardian had taken all necessary steps to protect his wards; and that one of the attorneys for the administrator bid off the land for the purchaser, do not constitute such constructive fraud as to vitiate the judgment, when it is found as a fact that there was no actual fraud.

8. A purchaser at a judicial sale, after he has paid the purchase money, may direct the commissioner to make title to another, and this furnishes no ground to set aside the order of sale.

(*Bell* v. *King*, 70 N. C., 330; *Hurdle* v. *Outlaw*, Ibid, 334; *Tate* v. *Mott*, 96 N. C., 19; *Grantham* v. *Kennedy*, 91 N. C., 148; *Williamson* v. *Hartman*, 92 N. C., 236; *Fowler* v. *Poor*, 93 N. C., 466; *Syme* v. *Trice*, 96 N. C., 243; *Smith* v. *Kelly.* 3 Murph., 506; *Shamberger* v. *Kennedy*, 1 Dev., 1; *Testerman* v. *Poe*, 2 Dev. & Bat., 103; *Campbell* v. *Baker*, 6 Jones, 255; cited and approved).

CIVIL ACTION, tried before *Avery, Judge*, at August Term, 1886, of BUNCOMBE Superior Court.

The plaintiffs, except Harry Marrigalt, are the legatees, devisees, and heirs at law of Joshua Ward, deceased, and brought this action only to recover the possession of the land described in the complaint.

The principal defendant, Charles T. Lowndes, in his answer, denied the material allegations of the complaint,

except that the plaintiffs were such heirs and devisees. He alleged as a matter of defence, that the said ancestor of the plaintiffs died insolvent, in the State of South Carolina, leaving a last will and testament, which was duly proven in that State, and a copy thereof, duly authenticated, was allowed, filed and recorded, according to law, in the county of Transylvania in this State, and the executrix therein named having renounced her right to qualify as such in this State, F. J. Whitmire was appointed administrator *cum testamento annexo* of the estate; that he obtained judgment against this administrator in the Superior Court of the county named, for the sum of $24,500.59, with interest thereon from the date of the judgment; that thereafter the administrator brought a Special Proceeding in the Court mentioned, to obtain a license to sell the land in question and other lands, to make assets to pay the debt named, and other debts of his testator; that under and in pursuance of orders and judgments in these proceedings, the lands were sold; the defendant purchased so much of the same as is now in controversy; the sale was confirmed; the purchase money was paid, and title, under his direction, was made to his wife, Sabina E. Lowndes; that these special proceedings were regular and effectual, and he was placed in possession of the lands about 1872, and has been in possession of the same ever since, &c., &c.

The plaintiffs, afterwards, by consent of parties, amended their complaint, reiterating that first filed, and alleged that the special proceeding mentioned and relied upon by the defendants in their answer, was fatally irregular, fraudulent, and absolutely void; that the present plaintiffs, devisees and heirs at law, were at the time of such proceedings infants of tender years; that they were not parties to them, in any just sense, or in contemplation of law, nor were they lawfully represented therein by any general guardian, or guardian *ad litem*, as allowed and required by law in such cases; that the

Court had no jurisdiction of them; that the supposed judgment was not such in law ; that it was not a just one, as to the amount honestly due the defendant Lowndes, but was obtained by fraud and collusion between him and the administrator named, &c., &c.

The defendant answered the amended complaint, alleging the regularity, fairness, justness and validity of the proceedings mentioned, the justice and fairness of his judgment, the sale, the due application of the assets—the proceeds of the sale of the land leaving a large part of his, and much of other debts unpaid—the effectiveness of the orders, judgment, sale, &c., &c.

The following is so much of the case settled on appeal as is necessary to a proper understanding of the opinion of the Court :

" The following issues were submitted to the jury, resulting in the responses as indicated :

1. What are the plaintiffs' damages?

Answer—One hundred and twenty-five dollars per year— one thousand eight hundred and seventy-five dollars.

2. What would be the present value of the land in controversy without the permanent improvements made upon it by the defendants?

Answer—Eight thousand dollars.

3. What is the present value of the land in controversy, including the value of the permanent improvements ?

Answer—Seventeen thousand dollars.

A trial by jury as to all other issues of fact was waived by the parties, and it was agreed that the Court should find all facts not found by the jury, and decide all other questions of fact and law involved in the controversy; thereupon, the Court finds the following facts :

1.   On the 25th day of April, 1870, F. J. Whitmire, administrator with the will annexed of Joshua Ward, deceased,

instituted in the Superior Court of Transylvania county, a Special Proceeding for the sale of land for assets, against Constantia Ward, the widow, and Florence, Samuel Mortimer, and Joanna Ward, children, heirs at law and devisees of Joshua Ward.

2. The defendants in said proceeding were non-residents of this State, and resident in the city of Charleston, State of South Carolina; Florence and Joanna residing with their step-mother, Constantia Ward, and Samuel Mortimer with Rev. A. Toomer Porter, his testamentary guardian, as appears in the will, all being under fourteen years of age. Florence and Joanna had no testamentary or general guardian; but by the will of the said Joshua Ward, which had been admitted to probate both in North and South Carolina, the. said Rev. A. Toomer Porter, also a resident of Charleston, South Carolina, was appointed guardian of Samuel Mortimer. It did not appear that any general guardian had been appointed for any of the infant defendants by any order or decree or judgment of any Court in North Carolina.

3. That Messrs. Bailey & Martin, attorneys at law, were the counsel for the administrator, and as such conducted this proceeding. Mr. Whitmire was a young lawyer, (having been a student of Messrs. Bailey & Martin,) residing in Transylvania county, and at one time, when and for how long does not appear, was associated in the practice in Transylvania county with Messrs. Bailey & Martin. Whitmire was dead at the time of the commencement of this action. The partnership between Messrs. Bailey & Martin was dissolved some time during the year 1870 or 1871, and before the institution of the proceedings herein after more particularly referred to, but in drawing many of the orders and decrees and report of sale in the second proceeding, Mr. Martin acted for the plaintiff Whitmire.

4. In the Summer or Fall of 1870, a Mr. Cheeseborough, a citizen of Buncombe county, received a letter from C. T.

Lowndes, stating that he had recovered a large judgment against Ward's estate, and requesting him, Cheeseborough, to purchase, if he could do so at a reasonable price, a tract of land in Buncombe county known as Rock Hall, which he understood was to be sold as a part of Ward's estate, to pay his debts. On receipt of this letter, Cheeseborough called upon Messrs. Bailey & Martin, and ascertained from them that the property in Transylvania county, now in controversy, as well as Rock Hall, was to be sold. That Cheeseborough then heard of the sale of this property for the first time. Cheeseborough instructed Mr. Martin, of Bailey & Martin, to bid in the Transylvania property for Mr. Lowndes. He then wrote Mr. Lowndes what he had done, and received his approval as to bidding it off.

5. At the sale on the 3d day of October, 1870, the bidding was lively, there being a good deal of competition, and the land was finally knocked down to C. T. Lowndes in the sum of six thousand five hundred and fifty dollars, Mr. Martin, of the firm of Bailey & Martin, bidding for him.

6. The estate of Joshua Ward was insolvent, there being then docketed against his administrator in Transylvania county, judgments amounting from twenty-seven thousand to thirty thousand dollars. Among them was a judgment in favor of C. T. Lowndes, founded upon a bond executed to Alexander Robertson on the 16th day of June, 1863, to secure the sum of sixteen thousand dollars, which said judgment amounted to twenty-four thousand five hundred dollars and fifty-five cents. This bond was given in satisfaction of the amount due from Joshua Ward to the firm of Robertson, Blacklock & Co., of Charleston, S. C., being the balance of his account with them up to the 16th day of June, 1863. This account showed a balance due from Ward, on June 30th, 1858, of $5,685.82; on the 30th of June, 1859, $9,737.32; on the 30th day of June, 1860, $12,286.74; on the

1st of November, 1862, $15,809.47; on the 1st of May, 1863, $15,615.47.

The complaint in this action was verified, and no answer was filed. The scale of Confederate money, established by law in South Carolina, was at the date of the bond $1 in gold to $5.13 in Confederate money; in North Carolina, $1 in gold to $6.15 in Confederate money. The summons was in Whitmire's handwriting; the body of the complaint in Mr. Martin's. Mr. Whitmire was the only resident lawyer at Brevard, the county seat of Transylvania county, and was often requested by the clerk to write for him, and to prepare papers requiring legal form, thus many of the orders in these proceedings were drawn by Mr. Whitmire at his (the clerk's) request.

7. On the coming in of Mrs. Ward's answer, and upon her request therein that Thomas L. Gash, Esq., be appointed guardian *ad litem* for Florence and Joanna Ward, the clerk of the Court applied to Mr. Gash to act as guardian *ad litem*. Mr. Gash was a gentleman of intelligence and character, and had frequently acted as deputy clerk. After some inquiry as to the nature of his duties, and having no knowledge of them, he consented to act, and was duly appointed and qualified. He then examined into the condition of the estate, corresponded with the said A. Toomer Porter, examined the judgments against Ward, and from these and other sources, satisfied himself that the estate was insolvent. He filed his answer, which, except the signature, was in the handwriting of Whitmire, the administrator, who was requested by him to put it in proper form. Mr. Gash's proceedings and actions in the matter, were done in good faith. He had never seen, did not know, and did not meet Mr. Lowndes until after the second sale.

8. After the sale of October 3d, 1870, and its confirmation, Judge Bailey, the senior member of the late firm of Bailey & Martin, having serious doubts as to whether the Superior

Court had jurisdiction of Special Proceedings to sell land, instituted another proceeding, returnable before the clerk of the Superior Court of Transylvania county, between the same parties except Constantia Ward, the widow, who had died in the meantime, and for the same purposes, a certified copy of which proceeding, marked Exhibit No. 2, was made a part of this finding.

The plaintiff objected to treating the foregoing exhibit as a transcript of the record, and insisted that the order appointing the guardian *ad litem,* purporting to have been made July 1, 1871, incorporated in said transcript, was incorrect. Plaintiffs, in order to show this, offered in evidence the Minute Docket of the clerk of the Superior Court of Transylvania county, in which an order marked Exhibit No. 3, is entered as the true order, instead of the order set forth in the certified record, known as Exhibit No. 2. J. R. Neill, clerk of the Court, testified that the original order made in the proceeding had been lost since Exhibit No. 2 was made out and certified to. The plaintiffs also offered a memorandum, admitted to be in the handwriting of the said Mr. J. G. Martin, and purporting to be a copy of a part of the record in the said proceedings, and insisted that it was apparent from comparing the memorandum with the certified copy, that the said order in Exhibit No. 2 was copied from said memorandum, and not from the original order. Mr. Neill testified that the said order incorporated in Exhibit No. 2 was copied from the original order on file in the papers. The order sent up as Exhibit No. 3 is identical in form with the order appointing the guardian in proceeding No. 1.

9. J. R. Neill, who was clerk of the Court testified that he had copies of the summons and petition duly deposited in the postoffice at Brevard, Transylvania county, on the 5th day of April, 1871, by O. L. Erwin, deputy clerk, addressed to the defendants at Charleston, S. C. It is insisted for the plaintiffs, that this evidence was contradictory of the affida-

vit of O. L. Erwin, which is incorporated in Exhibit No. 2. Porter, the guardian of Samuel M. Ward, received the copies addressed to him; whether the other parties received the copies addressed to them does not appear.

10. The proof of the service of the summons by publication in the North Carolina *Citizen*, was made, and was before the Court when the orders and decrees of July 1, 1871, were made.

11. At the sale under the decree of July 1st, 1871, made on the 5th day of August, 1871, the land was again bid off by Mr. Martin, for Mr. Lowndes, at the same bid as before, with interest added. The purchaser had been put in possession under the former sale, and he and they who claim under him, have been in continuous possession ever since. On the 13th day of January, 1872, the administrator, by the direction of Mr. Lowndes, conveyed the land to Mrs. Sabina Lowndes, the wife of the purchaser. No assignment of the bid appears of record, nor does it appear affirmatively that Lowndes assigned his bid in writing to his wife.

12. C. T. Lowndes was a resident of the city of Charleston, State of South Carolina, and was not present at either of the sales, or at the times when any of the orders and decrees in the proceedings were made, and was not in the county of Transylvania until after the last sale. He had no actual knowledge or notice that the answers of the guardian *ad litem* were in the handwriting of Mr. Whitmire. He was a man of good character. He is now dead, leaving a last will and testament, which has been admitted to probate in this State, a copy of which is appended, marked Exhibit C, and made a part of this finding.

13. Both sales of the land were fairly conducted, and the property brought a fair price. The purchase money was all paid before the making of the deed, and applied to the payment of the costs of administration, and the indebtedness of

Ward's estate *pro rata*, the share applicable to the Lowndes judgment being credited thereon, to-wit: $6,201.90.

14. The character of Messrs. Bailey & Martin was admitted to be very high.

15. That there was no actual or intentional fraud or collusion in the management and conduct of the said special proceedings, and sales thereunder.

Upon the foregoing facts the Court finds as conclusions of law:

1. That the defendants, having allowed testimony to be offered bearing upon the question of constructive fraud, can not object upon the final argument, that there is no sufficient allegation of fraud.

2. That upon the facts proved there is no constructive fraud shown.

3. That the irregularities pointed out in the complaint, and apparent in the record, have been cured by the statute.

4. That the purchaser under the decree of sale will be protected by the Court, and his rights acquired by his purchase will not be disturbed."

The Court gave judgment for the defendants, and the plaintiffs appealed to this Court.

*Messrs. McCrady* and *J. H. Merrimon*, for the plaintiffs.
*Mr. Theodore F. Davidson*, for the defendants.

MERRIMON, J., (after stating the facts). It is very apparent that the two special proceedings in question, in which the land in controversy was sold, were intended to serve the same purpose—that is, to effectuate the sale of the land of the testator of the plaintiff therein named, to make assets to pay debts of the testator.

Conceding irregularities—serious ones—in the first of them in order of time, the second was intended to cure these, and we think it had that effect, in most material respects. The

latter proceeding was competent for this purpose certainly, as the administrator *cum testamento annexo*, plaintiff in both of them, and the purchaser of the land at the sale of it in pursuance of orders in both, consented thereto, and the present plaintiffs were concluded by them, if they were parties defendant.

The plaintiff administrator in them and the purchaser at the sale of the land, cannot complain that there were two proceedings, because the former brought and was party plaintiff in both, and both he and the purchaser accepted— acted under and in pursuance of—orders and decrees therein, and were therefore concluded by them. The present plaintiffs cannot be heard to complain, because, if they were parties defendant in them, particularly the second one in order of time, as the Court decided they were, and they are concluded, having had their day in Court.

Any possible mistake or misapprehension in bringing these proceedings before the clerk, as Judge of Probate, or otherwise, when the same should have been brought in the Superior Court, or *vice versa*, cannot help the plaintiffs, because such mistakes and irregularities in that respect, in these and like proceedings, have been cured and made effectual by statute. (Acts 1870–'71, chap. 108, §1 ; Battle's Revisal, ch. 17, §§425, 426.) The validity of this statute has been settled by repeated decisions in this Court. *Bell* v. *King*, 70 N. C., 330 ; *Hurdle* v. *Outlaw*, Ibid., 334.

Infants—residents or non-residents of this State—like adult persons, may sue and be sued in its Courts in accordance with the prescribed methods of procedure, and judgments for or against them are just as effectual and binding upon them as in case of adult persons, unless otherwise provided by statute. *Tate* v. *Mott*, 96 N. C , 19.

They cannot, however, regularly prosecute actions or special proceedings without the aid of a general or testamentary guardian, if they have such in this State, and in the absence

of such, they must sue by their next friend.  And so, also, when they are defendants, they must defend by their general or testamentary guardian, if they have them in this State—otherwise by a guardian *ad litem*, to be appointed by the Court as prescribed by the statute (*The Code*, §181).  This statute should be strictly observed, but mere irregularities in observing its provisions, not affecting the substance of its purpose, do not necessarily vitiate the action or special proceeding, or proceedings in them.  The substantial purpose of this statute is, to have infants, in proper cases, made parties defendant, have them make proper and just defence, and to have their rights protected, and to this end, to have guardians to make defence for them.  They are not presumed to have sufficient intelligence and discretion to act for themselves—to care for and protect their rights of person and property.  Hence the law has a tender regard for them, and the Court will see on all proper occasions, that they and their rights are duly protected in all judicial proceedings affecting them.

Courts must obtain jurisdiction of infant defendants just as if they were adults, except as to those under fourteen years of age.  As to them, they must be served personally with the summons, by delivering a copy thereof, and the delivery of a copy thereof to the father, mother or guardian, or if there be none in the State, then to such person as may have the care or control of the infant sued.  (*The Code*, §217, par. 2).  And if the infant defendant be a non-resident, service of process upon him must be made by publication, as prescribed by the statute.  (*The Code*. §§218, 219).

Now, in the first of the two special proceedings above mentioned, the infant defendants therein—the present plaintiffs—were not made parties defendant strictly as the statute directed.

First, they and their mother were named as defendants. The mother at the time of the bringing of the proceeding,

being a *feme sole*, accepted service of the summons and petition, and filed her answer therein. The testamentary guardian of Samuel M. Ward, one of the infant defendants therein—one of the present plaintiffs—likewise accepted service of the summons and petition for his ward, and filed his answer.

The other infant defendants therein—Joanna and Florence—two of the present plaintiffs, had no general or testamentary guardian in this State, but, at the suggestion of their mother, made in her answer, the Court appointed Thos. L. Gash to be their guardian *ad litem*. He therefore filed an answer for them. But there was no personal service of summons upon any of the infant defendants. They were nonresidents, and no service of process by publication was made as to them.

The Court, nevertheless, made an order of sale, and the land in question was sold, and the sale confirmed. It may be, that the orders and judgments and the sale made in this proceeding, were rendered effective by subsequent curative statutes, but we need not so decide, because, afterwards, the administrator mentioned brought a second like special proceeding, as we have seen above, in which proper summonses were issued; the sheriff returned that the defendants were not to be found in his county; an order of service of process by publication was made, and publication was made.

The learned counsel for the apellants insisted on the argument, that the order of publication, the publication of notice, and the appointment of a guardian *ad litem* for the infant defendants in this proceeding, were irregular in several respects, and void. There may have been irregularities, but none such appear as, in our judgment, rendered the service by publication void. And moreover, and what is more important, the Court decided that service had been made by publication, and took jurisdiction of the defendants.

It is further decided, that a guardian *ad litem* for all the infant defendants had been appointed. This guardian was recognized by the Court as such, and he filed an answer for all the infant defendants.

It was certainly competent for the Court to make such decisions, although they might be erroneous, and such decisions would not be void; they could only be corrected in a proper way. Having so decided, and thus taken jurisdiction of the parties and subject matter of the proceeding, the Court proceeded to hear and determine the whole proceeding upon the merits, and made appropriate orders and decrees to accomplish its purpose. The purpose was accomplished and the proceeding ended.

The action of the Court may have been in some respects irregular; there may have been errors of law in its decisions, orders, decrees, and judgments, but these were not such as rendered the proceeding absolutely void. It remained operative and effectual until such irregularities and errors should be corrected in a proper proceeding for that purpose. This action is not a proper remedy to correct such errors. This could be done only by appeal from such orders and judgments in the proceeding, as an appeal lay from, taken at the proper time, or by a proceeding as a substitute for an appeal.

Nor is it a proper remedy to correct or take advantage of such irregularities. This could be done only by a proper motion for that purpose in the proceeding itself, made within a reasonable time. This is the settled course of procedure in such respects. *Grantham* v. *Kennedy*, 91 N. C., 148; *Williamson* v. *Hartman*, 92 N. C., 236; *Fowler* v. *Poor*, 93 N. C., 466; *Syme* v. *Trice*, *ante*, 243.

The plaintiffs allege very vaguely, that the special proceedings in question were fraudulent and void. It is, however, found as a fact, "that there was no actual fraud or collusion," and it was not contended on the argument before us,

that there was. The Court held, and we think properly, that there was no constructive fraud, as contended by the plaintiffs. The slight facts relied upon to prove it may have been some evidence of positive fraud, but they develope no such relations of parties, and acts done, and not done that ought to have been done, as constituted constructive fraud.

The counsel for the administrator was not the counsel of the defendants in the special proceedings, nor did they act, or profess to act, for them. The mere fact that Whitmire, the administrator—it seems for the convenience of the clerk—wrote the summons, cannot be held to be constructive fraud.

The purchaser of the land, Lowndes, directed the deed for it to be made to his wife, and the administrator did so make it. This is made a ground of objection by the plaintiffs. It seems to us to be wholly without merit. The purchase money was paid as required by the order of the Court, and the administrator was directed to make title to the purchaser. Why might he not make it to such person as the purchaser directed—to his wife? His power to convey to the purchaser was complete; the purchaser was entitled to have the deed made to him. Why not to have it made to such person as he might indicate? We can see no legal reason why he was not. It has been repeatedly held that the purchaser at such and like sales might "assign his bid," and the sheriff or commissioner charged to make the title, could make the same to the assignee. *Smith* v. *Kelley*, 3 Murph., 507; *Shamberger* v. *Kennedy*, 1 Dev. 1; *Testerman* v. *Poe*, 2 D. & B., 103; *Campbell* v. *Baker*, 6 Jones, 255.

This case has been elaborately and ably argued by the learned counsel for the appellants, but he has failed to satisfy us that we ought to accept the conclusions reached by him.

Our judgment is, that there is no error, and the judgment of the Court below must be affirmed.

No error.    .    Affirmed.