McKEE v. SIMPSON.

(*Circuit Court, N. D. Texas.* May 31, 1888.)

1. EXECUTORS AND ADMINISTRATORS — SALES UNDER ORDER OF COURT — LAND CERTIFICATES — TITLE.

Certain land certificates of an insolvent decedent were sold at auction in accordance with an order of the probate court, and, the successful bidder having been reported to the court as the purchaser, an order was issued confirming the sale and directing the conveyance to be made in accordance with said account of sales. The administrator, however, under circumstances amounting to the express direction of the purchaser at the auction, conveyed the land to the law partner of the latter, by an instrument reciting the order of the court, and also that the purchaser at the auction was really bidding for his partner. *Held* that, although under the law at the time, the confirmation by the court of the auction sale vested title in the successful bidder without fur-

ther conveyance, yet, it being the fixed custom to make such conveyances by further writing, the title, under the circumstances, would be held to have been vested in the grantee of the administrator's conveyance.

**2. SAME—VALIDITY OF INDEBTEDNESS.**

Where an order by a probate court for the sale of land recites that certain claims against the estate in process of settlement have been allowed and approved, the appellate court, called upon to determine the validity of the sale, will not go back of such order to determine whether any indebtedness had been authenticated, allowed, and approved.

**3. SAME—ANCILLARY ADMINISTRATION—LACHES.**

An ancillary administration, granted upon the estate of an intestate, is not void on the ground that 12 years elapsed after the testator's death before such administration was granted.

At Law. Suit for land.

Action to recover lands. A jury was waived, and the questions of law and fact submitted to the court.

*John L. Henry,* for plaintiff.

*William L. Crawford,* for defendant.

McCORMICK, J. The plaintiff sues to recover a certain tract of land described in her pleadings, which she says is a part of the community estate of herself and her first husband, William Irvin, who died in October, 1851, leaving no child, and intestate. And if the land did belong to their community estate at the time of her said husband's death, she is entitled to recover. This land was patented to John M. Ross, assignee, by virtue of Toby scrip land certificate No. 864, for 640 acres. John M. Ross appears by the proof to have resided in Natchez, Miss., and to have been engaged in business there, and to have died at his lodgings adjoining his office in that city in 1837. Administration was opened on his estate in Mississippi at the September, 1837, term of the probate court for the county in which the city of Natchez is situated. In the due course of that administration, the estate was declared insolvent, and a distribution of 33⅓ per cent. was ordered by the court to be distributed by the administrator to the creditors. One of the creditors was A. L. Gaines & Co., who, on the 1st of August, 1838, presented a claim against said estate for $2,043.62, which was duly allowed by the administrator, and approved by the judge of probates. On the 16th March, 1840, A. L. Gaines indorsed on this claim a receipt for $674.38 paid him thereon by the administrator in Mississippi. On the 28th of January, 1849, one Thomas Newcomb applied to the probate court for Bexar county, Tex., for letters of administration on the estate of said John M. Ross, representing that he was formerly of Bexar county, and that he left certain property in the town of San Antonio, in Bexar county, to-wit, 10 land certificates of 640 acres each, and that decedent died indebted to A. L. Gaines, of Natchez, in a large sum of money, "which said debt is still unpaid;" and that said Newcomb had been solicited by said creditor to take administration upon said estate. On the 26th February, 1849, administration was granted, and Newcomb qualified as administrator. On the 26th November, 1849, said court in Bexar county made an order reciting that Newcomb had died, and declaring the estate of John M.

Ross vacant. On the 9th of May, 1850, Henry Beaumont, by his attorney, William' Irvin, presented his application to said Bexar county court, showing that as the representative of certain creditors of Ross, said Beaumont had procured Thomas Newcomb to administer upon said estate, and, Newcomb having died, he, (Beaumont,) at the instance of said creditors, asks that letters of administration *de bonis non* may now be granted to him. On the 27th of May Henry Beaumont presented another application to said court, referring to his former action, and showing that he had applied for letters *de bonis non* because he could not find any one else willing to take the administration; that now William H. Ker was willing to take it, and asking to be permitted to relinquish his right to appointment in favor of Ker, and that the court would appoint Ker instead of himself, which was done, and Ker qualified as such administrator. On the 25th of November, 1850, William H. Ker, as administrator, obtained an order of the court to sell said 10 land certificates for the payment of debts and the expense of administration. The orders of said court recite that the claim of A. L. Gaines had been allowed by the administrator, and approved by the probate judge, against the estate of John M. Ross for the sum of $11,106.78. In accordance with the order of sale, the certificates were sold at public sale by the administrator on the 7th of January, 1851; and at the sale six of the certificates, including the one numbered 864, (the one involved in this suit,) were bid off to William Irvin. The sale was duly reported to the court, showing William Irvin to be the purchaser of certificate No. 864, and of five others, and showing the name of the purchaser of the other certificates, and the terms of sale and price for which each was sold. The sale was duly confirmed, and the order confirming the sale directed the administrator "to make conveyances in accordance with said account of sales and the requisition of the law to the respective purchasers of the certificates aforesaid." On the 12th day of April, 1851, the administrator, William H. Ker, by a formal instrument in writing, executed in the presence of two witnesses, (as a deed to land was then executed,) conveyed certificate No. 864 (and certificate No. 867) to Henry Beaumont, reciting in said instrument the facts as to the order of sale, the making the sale, and the bidding off of these certificates at the sale to William Irvin; and reciting further that in bidding these two certificates off at the sale the said William Irvin was bidding for said Henry Beaumont. The proof shows (and this is undisputed) that William H. Ker was the father of plaintiff, and that plaintiff was at that time the wife of William Irvin; and that William Irvin and Henry Beaumont were then, and for several years previous thereto, and thereafter until said William Irvin's death, partners in the practice of law. And the proof strongly tends to show, and does show to my satisfaction, that as such partners in the practice of law Beaumont and Irvin held the claim of A. L. Gaines for collection, and were to get one-half of what they could recover on it from the estate of John M. Ross, the expense of administration in Texas to be paid out of their half. In my opinion, the proof clearly shows that the attorneys conducted the business, and that William H. Ker was merely the nominal adminis-

trator, signing and qualifying to papers that required the personal action of the administrator, but which had all been prepared and arranged by the attorneys. Beaumont testifies that this business was almost, if not altogether, wholly managed by William Irvin, and I see no reason to doubt his testimony on this point, and to my mind the record of the probate proceedings strongly supports this part of Beaumont's testimony. The testimony of John Henry Brown, who (on the stand) says he knew William Irvin well, and was familiar with his handwriting, and knew it well, is that, in his opinion, the body of the conveyance of certificate No. 864, (and No. 867,) above referred to, is in the handwriting of William Irvin.

It is urged by the defendant that the Texas administration on John M. Ross' estate was void, because of the length of time that had elapsed between his death, in 1837, and the opening of the administration in Bexar county. To this I cannot agree. The case of *Martin* v. *Robinson*, 67 Tex. 371, 3 S. W. Rep. 550, and previous decisions, are express authority for a contrary holding.

It is also urged that the sale of the land certificates was void, because no indebtedness except the expense of the administration in Texas was ever authenticated and allowed and approved against the estate in Texas. But this proposition, I am of opinion, is conclusively met and overturned by the recitals in the orders of the court that the Gaines claim had been allowed and approved. However suspicious its wonderful growth in 10 years may appear to us, we cannot, in this proceeding, inquire into it. The defendant holds title from the heirs of Ross and from Beaumont, and relies, in case the administration and sale are held to have been valid, upon the conveyance of the certificate No. 864 by the administrator to Henry Beaumont, and the recitals in that conveyance, coupled with the evidence of Beaumont and Brown in reference thereto. The plaintiff, on this point, contends that the land certificate was personal property. That the confirmation of the sale by decree or order of the probate court did by law (though not by the terms of said order) vest the property in or evidenced by said certificate in William Irvin; and that, though William Irvin might thereafter transfer it to Beaumont by delivery, that William H. Ker could not, for that it passed from Ker by the order of confirmation, and that no conveyance from him was necessary or proper, the terms of the order of confirmation to the contrary notwithstanding. By numerous decisions of the supreme court of Texas, made since these transactions occurred, land certificates, are held to be (and to have always been, of course) personal property; and by the probate law in force when this sale was made the order of confirmation of an administrator's sale of personal property (other than slaves) vested the title in the purchaser, and a written conveyance from the administrator was unnecessary. But because land certificates evidenced a right to land in the owner of the certificate, and in fact in many cases the right to land under our colonization, head-right, bounty, and donation laws existed and was the subject of sale even before the certificate issued, the practice grew up, and in the older settlements was well nigh universal, to put

contracts in reference to these rights and in reference to sales of certificates (with certain exceptions) in writing; and, while it was doubtless competent for the probate court in Bexar county to have vested the title to certificate No. 864 in William Irvin, as the purchaser by the express terms of the order of confirmation of the sale to him, and while such may have been the legal force of said order without such terms, and notwithstanding the direction to the administrator to convey, as the administrator, in obedience to the terms of the order, and in obedience—as all the parties then doubtless believed—"to the requisitions of the law," did convey the certificates by writing in the form of a deed to land, and as this certificate No. 864 was thus conveyed to Henry Beaumont, as above shown, with the full knowledge, as I must believe from the proof, of William Irvin, and under circumstances equivalent to his express direction, I do not see how I can escape holding that this was a transfer and delivery of said certificate by Irvin to Beaumont, and that therefore no right in said certificate remained in Irvin which the plaintiff could take as the survivor at his death. The judgment of the court, therefore, must be for the defendant.