WEST *v.* BURGIE.

Opinion delivered May 27, 1905.

ADMINISTRATION SALE—EXECUTION OF DEED TO ANOTHER AT PURCHASER'S REQUEST.—One who purchases land at a sale by an executrix may have the deed executed to another.

Appeal from Chicot Chancery Court.

MARCUS L. HAWKINS, Judge.

Affirmed.

### STATEMENT BY THE COURT.

In December, 1871, one Curtis Garrett died, leaving a farm near Lake Village, in Chicot County, on which he resided at the time of his death, and other lands in the same county, and leaving his wife, Elizabeth, but no children. He also left a will, naming one Drusilla Acre as executrix. The wife dissented from the provision made for her by the will, and instituted proceedings in the probate court for assignment for her dower, and on the 12th day of September, 1873, the lands involved herein were set apart to her as her dower in the real estate. Also one-half of the personal assets, amounting to about $1,800, was received by the widow as dower.

On the next day, September 13, 1873, upon the petition of the executrix, the probate court ordered a sale of the lands of the estate, including the reversionary interest in the dower lands, to pay claims probated against the estate.

About April 15, 1873, the widow intermarried with the defendant, Samuel Burgie.

In accordance with said order, a sale of the lands was made on the 27th day of December, 1873, and the report thereof by the executrix was approved and confirmed by the court on January 17, 1874, and the report, the substance of which is stated in the order confirming the same, sets forth that the reversionary interest in the dower lands was sold "to Mrs. Elizabeth Burgie for the sum of $600, she being the highest bidder therefor," and "that said purchasers had paid one-half of the amounts bid for said land, and executed their notes, respectively, for balance, payable in twelve months, with ten per cent., and deed withheld until payments are made. * * * "

No other order of the court appears to have been asked or made thereafter with reference to the sale of these lands, but a deed dated November 26, 1877, was executed by the executrix to the defendant, Samuel Burgie, whereby she attempts to convey to him the reversionary interest in said lands, in which deed she recites the order of the probate court as authority for said sale, and, among other things, recites that she "did sell all of the lands of said estate on the 27th day of December, 1873, at which sale Elizabeth Burgie became the purchaser of that portion of said lands hereinafter described. And, whereas, it is represented and appears to me, by the statements of said Elizabeth Burgie and of D. H. Reynolds, her attorney, then and now acting for both her and Samuel Burgie, that said bid was intended to be and should have been confirmed in his name, and, whereas, said Samuel Burgie then and there paid one-half of the purchase money in cash, and the remaining half has subsequently been paid, with interest, according to the terms of said sale. And, whereas, report of said sale was duly made to the probate court of said county, and by it confirmed, and said Samuel Burgie now demands of me a deed to said lands." This deed was not acknowledged and filed for record until November 21, 1882— five years from its date, and nearly nine years from the date of the sale made by order of the probate court.

Elizabeth Burgie died on the 4th day of February, 1895, and appellants, as her heirs at law, brought this action on the 22d

day of July, 1901, to cancel the deed of Samuel Burgie and incumbrances on the property made by him to the other defendants.

The bill alleges "that the said defendant, Samuel Burgie, with the fraudulent design and purpose of cheating and defrauding his said wife and her heirs out of said property, and in utter disregard and violation of the confidence reposed in him by his said wife, as aforesaid, by false representations procured and obtained a deed from the said executrix of said estate of Curtis Garrett, deceased, pretending to convey said reversionary interest in said lands to him, the said Samuel Burgie, instead of said Elizabeth Burgie, the real purchaser and rightful owner thereof."

The separate answer of Samuel Burgie denied separately and specifically all the allegations of the complaint, including the one charging fraud as above quoted. He further alleges that he had in money $566 when he married, and that $530 of this went into his wife's hands for debt and her own use. That he made a crop in 1873 on this land, and from money on hand and proceeds of crop he made first payment of $300 in December, when the land was sold. That General Reynolds represented both himself and his wife, and had represented her for years before his marriage. That the land was bid off by Reynolds in his wife's name, but that it had been the understanding, distinctly made between him and his wife in advance of the sale, that the same should be bought in his name; that both payments for the land were made through Reynolds, who had his (Burgie's) money in his hands; that the last payment was delayed for several years from neglect of Reynolds, and, when made, Reynolds was informed of the agreement between himself and wife, and Reynolds was directed by the said Elizabeth Burgie to have the deed made to him by the executrix of Garrett, and that he paid the purchase money. That he had exclusive management and control of the place after his marriage, and labored himself, and always made good crops thereon; that only a small portion of the place was cleared, and he cleared, farmed and put houses on 125 acres. That a part of said land, being north half southwest fractional quarter, section 11, township 16 south, range 2 west, was under a mortgage to Real Estate Bank, and

had been foreclosed and bought in by the State; that he acquired the title of the State thereto by purchase.

By an amended answer Burgie alleges that he had expended on the land $7,000 in permanent and lasting improvements and taxes, believing himself to be the owner thereof; that he had also paid the purchase money, and that plaintiffs were estopped from claiming the land after seeing him expend his labor and all his income for twenty-five years on said land.

The other defendants answered, claiming certain interests in the land through Samuel Burgie.

The court heard the cause upon the pleadings and exhibits and the depositions of witnesses, and dismissed the complaint for want of equity.

*B. F. Merritt,* for appellants.

The mortgages introduced in evidence are no evidence of what title Mrs. Burgie had, nor would she be estopped from asserting any other interest she might really have.   52 Ark. 53.

*John G. B. Simms* and *E. A. Bolton,* for appellees.

Fraud must be proved.   14 Am. & Eng. Enc. Law, 486; 25 Ark. 225; 40 Ark. 417; 37 Ark. 145.   The admissions of witnesses Jarboe and Hunnicutt were competent.   55 L. R. A. 155. The burden is upon appellants to prove a resulting or constructive trust.   1 Perry, Trusts, 155; Tiedeman, Real Prop. § 500; 2 Perry, Trusts, § § 865, 869; 41 Ark. 301; 55 Ark. 85.   Laches is imputable to a married woman concerning her separate property. 2 Wall. 95; 1 Am. & Eng. Dec. Eq. 507; Wood, Lim. 117, 120. An administrator's sale passes no title until a deed is executed and delivered, and sale confirmed.   11 Am. & Eng. Enc. Law, 1155; 96 N. C. 367; 106 N. C. 376; 28 Am. & Eng. Enc. Law, 824. One may deal with his own as he elects.   70 Ark. 252; 2 Perry, Trusts § 679; 2 Am. & Eng. Dec. Eq. 338.   The finding of the chancellor will not be disturbed unless against the evidence.   71 Ark. 608; 68 Ark. 134, 314; 44 Ark. 216.

WOOD, J., (after stating the facts.)    The burden to show fraud in the deed was on appellants, and they have failed to

make the proof. On the contrary, Burgie has made good by his proof the denial in his answer of the charge of fraud.

It appears that John G. B. Simms was the attorney for the executrix of the estate of Curtis Garrett. He, for her, procured from the probate court the order of sale of the lands·in controversy. For her he conducted the sale, made report thereof, wrote the deed, and, in fact, as attorney for the executrix, attended to the whole matter of this sale. Necessarily, his relation to the transaction enabled him to testify more intelligently, and, we are disposed to think, more correctly, about it than anyone else. There are some conflicts between his testimony and that of Burgie. These have been stressed by learned counsel for appellants; also certain things which Burgie and Simms did, or failed to do, in regard to the report and confirmation of sale. All of which are urged as being inconsistent with the recitals in the deed, and as evidence of an effort to defraud Elizabeth Burgie.

We may say, in this connection, that, if there was any fraud on the part of Burgie, Simms necessarily knew and participated in it; else the deed could not have been executed to Burgie. But we do not find any evidence of fraud on the part of either. The conflicts and inconsistencies are as to nonessentials, and, instead of tending to prove collusion and fraud, as counsel intimate, to our minds, rather have the opposite effect. They indicate that natural divergence in language and recollection of witnesses who have not concocted their story, but each, in his own way, has related the facts as he remembered them.

The testimony and conduct of both Burgie and Simms, we believe, is entirely consonant with truth and good intention. The only testimony which appellants have introduced to show that Mrs. Burgie had no knowledge of the deed to Samuel Burgie, and that she claimed the land, was that of two witnesses to the effect that they heard Mrs. Burgie say some time in 1892 or 1895 "that the place was hers." These remarks are testified to having been made by Mrs. Burgie some twelve or fifteen years after the execution of the deed. On the other hand, more than two witnesses heard her say, long after the execution of the deed, that the land belonged to Mr. Burgie. These are not essentially in conflict; if so, the preponderance is with the appellee.

But Mrs. Burgie did have dower interest in the land, and had long lived on it with her first and second husbands, and she might have spoken of the place as belonging to her, without any thought of making the impression that she was the absolute owner, but only to express the idea that she had an interest in it, and claimed it as her home, and that she would not part with her interest. That she did, not claim an absolute estate in the land is more convincingly shown by her conduct in joining in several conveyances after the deed in controversy had been executed, in which she only relinquished dower. This solemn act in writing, of record, is a more cogent argument that she knew she had only a dower interest in the land than is any mere vague and loose declaration that the "place was hers" of the fact that she knew or believed that she was the owner of the fee. So, again, the preponderance is in favor of the appellee.

Witness John G. B. Simms testified that "the recitals of the deed, as to the reasons why it was made to Samuel Burgie, instead of Elizabeth Burgie, are absolutely correct," and we find nothing in the record to warrant a finding to the contrary.

Second. The question then is, in view of the report and confirmation of the sale, was the deed valid?

It is reasonably clear from the evidence that Burgie furnished the purchase money for the land; and, although it appears that the bid at the sale was made in the name of Mrs. Burgie, and the sale was reported as made to her, and so confirmed, yet there is abundant proof to justify the conclusion that Mrs. Burgie intended that Samuel Burgie should have the land, and that the deed, notwithstanding the report of sale and confirmation thereof to Mrs. Burgie, was made, nevertheless, in conformity to the wishes of Mrs. Burgie and the understanding between her and her husband, by the executrix to him. Even if it can be conceded that Mrs. Burgie paid the purchase money, and the sale was made and confirmed to her; still no title passed until the deed was executed and delivered, and she had the perfect right to have the deed executed to whom she desired. The law concerned itself for the protection simply of the estate, and to this end would see that the purchase money was paid before the deed could be executed. This done, it was wholly immaterial to whom

the deed was made, provided it was done at the request of the purchaser. The land, in equity, after the payment of the purchase money, even it it was made by Mrs. Burgie, was her property and she could dispose of it as she saw proper. There is nothing in the law to interdict the executrix from making the deed as the purchaser directed. For the sale is in no manner affected thereby, and it is just a question at last in a court of equity whether or not the purchaser desired the deed made in the name of another. 2 Woerner, Administration, § 480, * 1067-68; 11 Am. & Eng. Enc. Law (2d Ed.), p. 1155; *Ward* v. *Lowndes,* 96 N. C. 367; *McKee* v. *Simpson,* 36 Fed. 248. The deed was valid.