Ruffin, C J.
 

 The Court thinks the demurrer ought not to have been sustained. The bill, it is true, is very badly drawn, stuffed with epithets not pertinent, and irrelevant matter, and wanting in directness and precision in the material allegations. The vagueness of the charges, not stating specifically the grounds on which each of the defendants is to be charged, may perhaps prevent the plaintiffs from getting as satisfactory answers, as might be desired ; and probably the plaintiffs
 
 *87
 
 may find themselves under the necessity of amending the bill) in order effectually to obtain all the relief they ought to have. But even at present, we cannot say, that the plaintiff's have not entitled themselves to some relief.
 

 There is no doubt, that a creditor may follow the assets into the hands of legatees, and of other persons, claiming as. volunteers or fraudulent alienees of an unfaithful and insolvent executor. Bills for that purpose are not
 
 unfrequent.
 
 The creditor has an evident equity to satisfaction out of the testator’s estate, in preference to the volunteers ; and, if he cannot obtain his debt from the executor, he is clearly entitled to pursue the fund until it has changed its character by a sale to some person on an honest contract. That seems to have been the purpose of this bill, though darkly expressed.- But reading the bill carefully, and throwing off what is irrelevant, and bringing together what is material, that can, we believe, be made out to be in substance in the bill, we find these statements in it, among many other
 
 idle ones:
 
 That -pending an action at law brought by the plaintiff, against the defendant Patrick B. Threadgill, as executor of Thomas Treadgill, sen. he, the executor, and “ the other defendants,” with the intent to defeat the plaintiffs’judgment, if recovered, procured an order of the County Court for a sale of the negroes of the testator, upwards of twenty in number, under the false pretence that it was necessary for the purposes of paying debts and distribution: And that Thomas Threadgill, jr., Gideon B. Threadgill,and George Allen (three of the defendants) “having taken the control .and-charge of the executor, who was an intemperate,and weak man, contrived to effect a sale of several of said slaves.; a few of which were bought by other persons,whose bonds were transferred before due by the executor by the aid of the said three defendants, in order to realize the proceeds before the plaintiffs could get judgment were by mere sham and fraud, through
 
 the forms of
 
 a sale, public or private, transferred over into the possession of
 
 *88
 
 the said Thomas, jr. and Gideon B.; that there were still eighteen slaves belonging to the estate in the hands of the executor “ or the other defendants,” not disposed of, and “the defendants” conceived the idea of carrying them out of the State, in order to hinder the plaintiffs of their recovery, and that “ the defendants all joined in collecting those eighteen (who are named) and in confining them so that they might be safely carried away, and, then, that the two defendants, Thomas Threadgill, jr. and Wilson Allen, acting under the directions of the other defendants (who are Patrick B. Threadgill, the executor, Gideon B. Threadgill, George Allen, and Joseph W. Allen) carried them out of this State, before the plaintiffs obtained judgment.” The bill further charges,. " that the sales by the executor, where any of the defendants” purchased, were sham sales; and that, if any bonds were given for the purchase money, the same were never paid, and in fact nothing was paid to the executor by either said Thomas, jr. or Gideon B., or any other of the defendants for any of the slaves, which they pretended to purchase ; and that “ all the said sales, or pretended sales, to the defendants or any of them were without consideration and fraudulent.” It is further stated, that the plaintiffs finally obtained judgment at law for $4950 83, and sued out a
 
 fieri facias de bonis testatoris,
 
 on which a sum was levied by the sale of some few articles, and that no other property could be found, and, the residue of the debt remains unsatisfied ; and that the executor is insolvent and entirely without property of his owii. Here, then, is a distinct allegation, that there was a pretended and fraudulent sale of several of the negroes
 
 to two
 
 of the defendants, Thomas and Gideon B. Threadgill, which must be understood as vesting the apparent title in them ; and so far, if that be true, the bill is, at all events, a proper one. The charge is not so distinct of an actual sale and conveyance of slaves to the other defendants, and it is only to be collected by inference, that it was intended
 
 *89
 
 to be so alleged. It is unnecessary, however, to say whether the bill could be sustained upon such vague and inferential allegations by themselves, nor how far it might be supported upon the removal of the other eighteen slaves out of the State, or upon the fraudulent agency of three of the defendants in effecting the sales under the order of Court and receiving the money that was paid thereon; because the demurrer must be overruled, at all events, and those questions will be better disposed of upon the hearing, when, probably, all the facts will be before the Court upon the answers and proofs. We say the demurrer'must be over-ruled at all events, because enough appears to entitle the plaintiff, if true, to a decree as to the “several negroes” conveyed or sold to Thomas and Gideon B. Threadgill; and therefore this joint demurrer of the defendants to the whole bill (except the formal charge of combination) will not lie. For, it is the general rule, that a demurrer must be good .throughout, and that if it cover too much it must be overruled
 
 in toto. Thompson
 
 v.
 
 Newlin, 3
 
 Ired. Eq. 338. The first and principal cause of demurrer for want of equity, is, therefore, net good. It was, however, said also in its support, that the bill ought not to lie now, because the statute gives a remedy at law, by
 
 scire facias,
 
 and trial by jury.
 
 Rev. St. Ch.
 
 50. But that is but a cumulative legal remedy, not so effectual in many cases as that in equity, where accounts may be taken, all parties in interest brought before the Court, and the decree enforced, not only by execution, but by process for contempt. Besides, the rule of construction is settled, that statutes, which merely give affirmatively jurisdiction to one Court, do not oust that pi-eviously existing in another Court. There is nothing incongruous in concurrent jurisdictions ; and therefore, that of the Court of Equity, or of the higher Courts, proceeding according to the course of the common law, is never taken away but by plain words, or as plain intendments,
 

 
 *90
 
 What has been said, disposes of the demurrer, and it is not necessary that more should be said. Perhaps however, it may be proper to notice the other points.
 

 The bill is not multifarious ; for the plaintiffs are pursuing one demand against one fund, the assets of their debtor. Though not necessarily, yet the defendants were properly all made defendants, as having different parts of that fund, either in negroes or their proceeds, in their hands, or being liable for their value, and, so, bound at least to contribution.
 

 It is not necessary to scan the bill to see whether it imputes to the defendants an indictable conspiracy: for, if it do, it furnishes no ground of demurrer to the relief prayed, though it might justify a demurrer to so much óf the hill as seeks a discovery of the facts constituting that crime. It would be a strange reason for dismissing a bill, that the plaintiff’s equity arose out of a transaction, for which the defendants Were also liable
 
 criminaliter
 
 for a misdemeanor.
 

 It is not the'ground of the plaintiff’s equity at all, that he has a specific lien on the slaves. If such a lien had attached, it could be enforced at law, and the plaintiffs need not have come here. The equity is, -that they are entitled to have satisfaction from the negroes, or their proceeds, in the hands of the defendants, because there is no other property of the testator accessible, and the executor is not only insolvent, but without any property.
 

 Barnawell’s wife appears, on the face of the bill, to be a plaintiff; having been made so by amendment allowed. The bill states, that the plaintiff before judgment instituted some proceeding for a
 
 ne exeat ¿¡-c-;
 
 but it does not appear in the bill to be still pending ; and, if it did, this case is essentially different by reason of the subsequent judgment and execution, and other occurrences.
 

 The decree was, therefore, erroneous and must be reversed, and the demurrer be over-ruled. We cannot say, however, that the defendants were so much to blame for
 
 *91
 
 taking the opinion of the Court upon such a bill as the present, as to entitle the plaintiffs to costs on over-ruling the demurrer. But, on the other hand, most of the causes of demurrer are so captious and obviously unfounded, as to induce a pretty strong suspicion, that it was put in much for delay and vexation. Therefore, it seems best to give costs to neither side, as far as the case has as yet gone.
 

 Per Curiam.
 

 Ordered to be certified accordingly.