The case was referred, and the report of the referee excepted to by the defendant. His Honor, on the trial below, sustaining the exception, the plaintiffs appealed.
The facts of the case, with the exceptions to the report and the opinion of the Judge below, are fully stated in the opinion of the Court.
This was an action for the recovery of a legacy, made returnable to the regular Spring Term, 1870, of the Superior Court for Macon County, and removed by consent of parties at Fall Term, 1871, to the county of Buncombe.
The first question for our consideration is one of jurisdiction.
"The Clerks of the Superior Courts shall have jurisdiction of the probate of deeds, the granting of letters testamentary and (331) of administration, the appointment of guardians, the apprenticing of orphans, to audit the accounts of executors, administrators and guardians, and of such other matters as shall be prescribed by law." Constitution, Art. IV. sec. 17. Here is an express grant of jurisdiction to grant letters testamentary and of administration, and to audit the accounts of executors and administrators; but the manner of enforcing the collection of legacies and distributive shares, is left to be regulated by legislation.
And this was done by the Act of 1868-'69, ch. 113, sec. 83. We have held, that in every case where the Court of Probate can give an adequate remedy, the party asking it must apply to that Court; and that it has, under the clause of the Constitution and the legislation, supra, original jurisdiction of special proceedings for the recovery of distributive shares and legacies, which have not been assented to by the executor. But since those decisions the Legislature has passed the act of 1870-'71, ch. 108, for the express purpose of curing such mistakes, as the one before us. His Honor was of opinion that this act, if not unconstitutional, did not apply to actions for the recovery of legacies, since special proceedings for certain other purposes are mentioned in the act, and the subject of legacies is not mentioned.
But this construction is too narrow, and would defeat many of the beneficial purposes of an act which was intended to cure defects of jurisdiction, not only in petitions and special proceedings, but also in any action which may have been improperly brought. Much of the jurisdiction of Clerks or Probate Judges has been conferred by legislation and is subject to be changed by the same. The act of 1870-'71,supra, was re-enacted and enlarged on the 3d day of March, 1873, acts of 1872-'73, ch. 175. And it is worthy of observation that the act of 1870-71, has been brought forward in Battle's Revisal, ch. 17, secs. 425 — 426. We do not see that these acts infringe the Constitution, and the decisions of the Court have treated the subject (332) *Page 274 
of jurisdiction, as one to be regulated by legislation. In McAdoov. Benbow, 63 N.C. 461, the Chief Justice in delivering the opinion of Court, says that under the provision of the Constitution, which ordains that the Clerks of the Superior Courts shall have jurisdiction "of such other matters as shall be prescribed by law," the General Assembly had power to enact the Code of Civil Procedure, by which the functions of the Superior Court is to some extent divided between the Judge and the Clerk; and under this same clause the General Assembly has power to repeal, suspend, modify or change its enactments, so as to make writs of summons returnable to the regular terms of the Superior Courts. But notwithstanding his Honor held that he had no jurisdiction, he proceeded to dispose of the case upon its merits, and we think that he has erred in his conclusions of law, upon the facts found and reported by the referee. It appears that the testator died in 1859, leaving a last will and testament, in which he bequeathed to the plaintiffs a legacy of two thousand dollars; that the defendant qualified as his executor, and on the 25th day of January, 1860, sold personal property to the amount of $19,592.14, and took notes with good security therefor, payable twelve months after date; that there was cash and good notes on hand at the death of the testator, which came to the hands of the defendant to the amount of $5,042.58; that after the death of the widow of the testator in January, 1862, he sold the property which had been bequeathed to her for life, in February, of the same year, on a credit of twelve months, for the amount of $3,362.23, and that the Mills note amounted to $1,406.74, the whole amounting to $29,403.70. It further appears that the Commissioners who settled with the defendant, under an order of the Court of Pleas and Quarter Sessions for Polk County, at March Term, 1864, found that he should be charged, after deducting all credits and vouchers, with the net amount of $28,498.82, and that the defendant acknowledged that amount to be correct. The defendant admits that (333) he never paid any part of this legacy. These facts, found by the referee, are not denied, and we could not fail to notice that the defendant, in his answer, contents himself with the general allegation, that "in good faith he collected all the debts due the estate, except some very small amounts in Confederate money," but he does not inform us when he collected the money. We only see, from the facts found by the referee, that he collected some of it at Fall Term, 1863, of Henderson Court, and other portions of it after that time, and that he "showed a certificate for $3,000 deposited out of these funds for the benefit of the plaintiffs, and to pay their legacy, in the name of Caleb King, executor of J. King, dated March 12th, 1864." Why did he *Page 275 
collect these good notes in the Fall of 1863, and afterwards? Was it for the purpose of turning good notes into Confederate script? There was no occasion for this collection and re-investment, that we can see, and the defendant has furnished us no good reason for so doing. We think that the whole current of the decisions, in this State, is against the defendant, and that he should be held responsible for this legacy. But it is objected, that while the referee charges the defendant with interest, he does not fix the time at which the legacy should begin to bear interest. We presume that it was intended to charge the defendant with interest from and after the date of his settlement with the Commissioners, to wit; at March Term, 1864, of the Court of Pleas and Quarter Sessions for the County of Polk; but this is not expressly stated by the referee, and the counsel for the plaintiff removes this objection by declaring his readiness to remit all interest. This certainly answers to the defendant's exception.
The judgment of the Superior Court is reversed, and judgment entered here for the plaintiff for two thousand dollars, the amount of the legacy.
PER CURIAM. Judgment reversed and judgment for plaintiff.
Herring v. Outlaw, 70 N.C. 336; Bidwell v. King, 71 N.C. 288; Hendrickv. Mayfield, 74 N.C. 632; Johnson v. Futrell, 86 N.C. 125; Ward v.Lowndes, 96 N.C. 377; Lowe v. Harris, 112 N.C. 490; Settle v. Settle,141 N.C. 564.