## CASWELL POLLARD v. SUSAN SLAUGHTER.

*Dower — Jurisdiction of the Superior Court over — Executory Devises.*

1. Where there is a devise in fee simple, with an executory devise over, the wife's right to dower attaches on the first estate, and is not defeated on its determination.

2. A widow is entitled to dower in all lands of which her husband was seized during coverture, and which any child she might bear him could by possibility take by descent.

3. The equitable jurisdiction of the Superior Court over dower has not been taken away by giving cognizance of such matters to the clerk; but in order for the jurisdiction to attach as a general rule, some equitable element should appear in the application.

(*Campbell* v. *Murphy*, 2 Jones' Eq., 357; *Jones* v. *Gerock*, 6 Jones' Eq., 190, cited and approved).

CIVIL ACTION to recover land, tried at February Term, 1884, of WAKE Superior Court, before *Avery, Judge.*

The facts appear fully in the opinion.

There was a judgment for the plaintiff and the defendant appealed.

*Messrs. Fuller & Snow, D. G. Fowle* and *E. C. Smith,* for the plaintiff.

*Messrs Battle & Mordecai,* for the defendant.

ASHE, J.    This was an action to recover land, tried before *Avery, Judge,* at the February Term, 1884, of WAKE Superior Court.

A jury trial was waived and the action submitted to the decision of the Court.    The plaintiff claimed the land in controversy under the will of Berry Surles, which said will is as follows, to-wit:

"First, I give and bequeath to John Pollard, one negro girl named Jane, to him and his lawful heirs begotten of his body;

dying intestate, such to return to Caswell Pollard and Thomas Slaughter, or their lawful heirs begotten of their bodies.

"Then second, I give Caswell Pollard one negro girl by the name of Hannah, to him and his lawful heirs begotten of his body, dying without such, to return as above directed.

"Thirdly, I give to Thomas Slaughter, one negro girl named Pat, to him and his lawful heirs begotten of his body, dying without such, to return to John and Caswell Pollard, or their lawful heirs begotten of their body, and the balance of my land and negroes to be equally divided between John Pollard, Caswell Pollard and Thomas Slaughter, after paying all my just debts; with this exception, Buck, it is my desire that he be sold to a speculator, and it is my desire that all of my stock of all kinds to be sold and equally divided between them as above stated, also my money and notes to be divided in the manner above stated, equally, my three sons which is named in this will. It is my desire if they all should die without such heirs, to return to my brothers and sisters or their lawful heirs."

It was admitted that John Pollard, one of the devisees, died, leaving no issue of his body, and his interest in said land was divided between Caswell Pollard and Thomas Slaughter, by a decree of the Superior Court of Wake county, and that Thomas Slaughter, on the——day of——, 18—, died, leaving no issue of his body, but leaving a widow, the defendant in this action.

The defendant, in her defence to the plaintiff's action set up as a counter-claim that she was entitled to dower in the land in controversy, as the widow of Thomas Slaughter, who was seized thereof at his death of an estate of which her issue might have been heirs, and demanded judgment that she have dower allotted to her in the same.

The Court rendered judgment in behalf of the plaintiff, and the defendant appealed.

The case was argued in this Court at considerable length and with great ability by counsel on both sides, and the only question

mooted by counsel was, whether the plaintiff was entitled to dower in the lands described in the complaint.

Both parties claim under the will of Berry Surles, and the question in controversy depends upon the construction of the will. The plaintiff contends that the proper construction of the will is, that the same conditions and limitations attached by the testator to the personal estate apply as well to the devises, and that upon the death of either, John Pollard, Caswell Pollard or Slaughter, without heirs of his body at the time of his death, his share passed to the survivors, and upon the death of another of the devisees without heirs of his body, his share went to the last survivor with the accrued interest of him who first died, because the testator directed that upon the death of *all* the named devisees, without such issue, the *whole* estate should go over to his brothers and sisters, and that when either one of the devisees died without having issue, his estate at once ceased by the limitations to the survivor, and the estate ceasing, all the incidents of the estate, such as dower, ceased with it.

The defendant insisted, that conceding the construction contended for by the plaintiff to be correct, that, by the will and the operations of the act of 1784, (CODE, sec. 2180,) a fee simple estate was vested in each of the devisees, to be defeated by the happening of the contingency of dying without heirs of the body, and when one of them died, without having had issue, leaving a widow, she would be entitled to dower, because her husband had been seized of an estate of inheritance in the law, during the coverture, to which any child she might have had by him would have been heir. If the construction contended for by the plaintiff is not the proper interpretation of the will, then the only other construction of which it is susceptible, is that the devise in the will vested in each of the devisees an absolute estate in fee simple, without any of the conditions or limitations annexed to the bequests of personalty.

But in the view we take of the case, it is needless to decide which is the proper construction, and we, therefore, express no

opinion upon that point, for whichever way it is taken, in our opinion the defendant is entitled to dower.

From the leading and most reliable authorities upon the subject of a widow's right of dower, the criterion for determining in any case whether she is entitled to dower, is whether her husband was seized of such an estate during the coverture, as any child she might have by him could by possibility take it by descent. Littleton in 1 Thomas' Coke, sec. 53, page 450, lays down the rule to be, in "any case where a woman takes a husband seized of such an estate in tenements, &c., so as by possibility it may happen that the wife may have issue by her husband, and that the same issue may by possibility inherit the same tenements of such an estate as the husband hath, as heir to the husband, of such tenements she shall have her dower—not otherwise."

The same rule is laid down by Blackstone, who adds that if the land abides in him (the husband) for the interval of but a single moment it seems that the wife shall be endowed. 2 Bl., 132. To the same effect are the opinions of Scribner, in his work on Dower, and Washburn on Real Property.

Perhaps there is no subject in the law which has given rise to a greater diversity of opinion and elicited more learned disquisitions than the question involved in this case, whether the widow of one to whom by executory devise an estate is given in fee simple, but if he should die without issue, then over to another in fee, is entitled to dower.

The first and leading English adjudication on this subject was the case of *Buckworth* v. *Thirkell*, 3 Bos. and Pull., 652, note. The facts in that case were substantially that an estate by executory devise was given to M. B. in fee simple in the event she should attain the age of twenty-one, or her marriage. Upon the happening of either event she was to take an estate in fee simple. But in case she should die before attaining the age of twenty-one and without having issue, in that event the estate was limited over. She married one Hansard, had a child by him, the child died, and then she died under the age of twenty-one, without

leaving issue. The case was twice argued in the King's Bench, and after due consideration, it was held, that the husband of M. B. was entitled to his *curtesy*. The principle there decided after such careful consideration was, that the determination of an estate by operation of an *executory devise*, does not defeat the right of the husband to be tenant by the *curtesy*, nor the widow of her right of dower. For the same principle applies as well to the one estate as to the other, only in the case of *curtesy*, the wife must be actually seized, and a child born capable of inheriting the estate.

This was deemed a leading case in England upon the subject involved, and was followed by the case of *Moody* v. *King*, 2 Bing., 447—where there was a devise to A and his heirs, but if he should have no issue, the estate devised was, on his decease, to become the property of the heirs-at-law. A died without issue, and it was held, upon the principle laid down in *Buckworth* v. *Thirkell*, *supra*, that the wife was entitled to dower, and was also followed by *Doe* v. *Timins*, 1 B. and A., 549; *Goodmorst* v. *Goodmorst*, 3 Prest. Abs., 372.

In *Moody* v. *King*, *supra*, C. J. Best says that, though the opinion of Lord Mansfield, in the case of *Buckworth* v. *Thirkell*, has been questioned, it has been the settled law in England, and cites in that connection Littleton, sec. 52.

In the United States, the decision announced in that case has been generally approved and adopted. In a South Carolina case, *Millidge* v. *Lamar*, 4 Dessaus., 637, where the devise was to Thomas and his heirs, but should the said Thomas die without any heir of his body begotten, then over; it was held, that upon Thomas dying without issue, his wife was entitled to dower, and the Court spoke with approbation of *Buckworth* v. *Thirkell* and *Moody* v. *King*, and cited Littleton, sec. 52, in support of the principle that the widow is entitled to dower when any child she might have would take the estate by descent.

In Kentucky, where there was a devise to A and his heirs, but if he should die without heir, the estate should go to his sis-

ters—and A married and died without issue; it was held, that his widow was entitled to dower, upon the ground that in all cases where the husband is seized of such an estate *that the issue of the wife, if she had any, would inherit it,* she was entitled to dower, though the estate is limited over, upon his dying without issue, and he does die without such issue—12 B. Mon., 65. And in Pennsylvania, by an executory devise, an estate was given to two sons, A and B, their heirs and assigns, but if either should die without having lawful issue living at his death, his estate should vest in his surviving brother and his sister; it was held that the widow of one of those sons, who had died without issue while the other son was living, was entitled to dower, and it was awarded her. *Evans* v. *Evans,* 9 Penn., 190.

The same doctrine is maintained by the Court of Appeals in Virginia in the case of *Taliaferro* v. *Barnwell,* 4 Call., 321, and by the following text-writers with unqualified approval: 2 *Minor's Institutes* (marginal page), 116; *Scribner on Dower,* 306; 1 *Washburn on Real Property,* 248; 1 *Jarman on Wills,* 668, and 2 *Crab on Real Property,* 167. Against this array of authorities the plaintiff's counsel relied, for the support of his position that the defendant was not entitled to dower, upon *Scribner on Dower, Park on Dower,* 11 Law Library (marginal), 166; *Sumner* v. *Partridge,* 2 Atkyns, 47; *Coke upon Littleton,* sec. 241, Note "A," Butler; *Adams* v. *Buchanan,* 1 *Page,* 634; 4 *Kent,* 49; *Willes* v. *Willes,* 28 *Barb.,* 538. But the principal authorities relied upon are *Kent's Com., Park on Dower,* and *Butler's Note to Coke.*

Chancellor Kent, on the page referred to by defendant's counsel, after stating, as an undisputed proposition, that dower will be defeated by the operation of collateral limitations, proceeds to say: "The estate of the husband is, in a more emphatic degree, overreached and defeated by the taking effect of the limitations, than in the case of collateral limitations, and the ablest writers on property law are evidently against the authority of the case of *Buckworth* v. *Thirkell,* and against the dowress, where the fee of

the husband is determined by executory devise, or shifting use," and the authorities referred to to sustain his position in the note, are Butler's note, *supra*, *Sugden on Powers*, 333; 3 *Preston on Abstracts of Titles*, 372, *and Park on Dower*. Park in his treatise does disapprove of the judgment of Lord Mansfield in *Buckworth* v. *Thirkell*, and he has made a very long, elaborate and learned argument against his lordship's decision in that case, but he does not seem to be very well supported by the authorities cited to sustain his position—for instance, he takes the case of *Sumner* v. *Partridge*, 2 Atkyns, 46, as an authority for his position.

That was a devise to A and his heirs, and if she died before her husband, he to have twenty pounds a year for life, remainder to her children; it was held, the husband of A was not entitled to *curtesy;* and it was properly decided upon all the authorities, for the children of A did not take by descent, but by purchase; *curtesy* necessarily arises out of an inheritance. He refers to *Sugden* and *Preston* as sustaining his position, and says Mr. Sugden, in his valuable treatise on Powers, has intimated his opinion that the case of *Buckworth* v. *Thirkell* was not rightly decided, and adds, " such appears to have been formerly the opinion of another conveyancer of great eminence," (meaning Mr. Preston). But he admits in the later writings of that gentleman there appears to be an inclination to retract his former opinion. To show how much weight should be attached to Mr. Park's comments upon the decision of Lord Mansfield, in the conclusion of his criticism, he suggests, that the reader should receive his observation with caution, saying, " until the law of *Buckworth* v. *Thirkell* (if it be a decision for the point understood), shall be reconsidered before a competent jurisdiction, it cannot be considered in practice but that a title of dower does exist under the given circumstances, and the remarks of the writer, although not standing alone, can have no other influence, than as they may tend to show that there is a possibility that that decision may not be followed." There is a clear admission that

the practice, and therefore the weight of authority, is in accordance with the decision of Lord Mansfield, and this is the main authority upon which Chancellor Kent's opinion was based.

The next authority relied upon by the defendant's counsel was Butler's note to Coke, with a very high and learned encomium upon Mr. Butler. His note was cited as containing a decided condemnation of the decision in *Buckworth* v. *Thirkell.* But Mr. Butler does not do anything of the kind. In his note he cites Fitzherbert's Natura Brevium, 159; *Tlone* v. *Ven,* 1 Roll. Abr., 676, and one or two other authorities, and says the principle deduced from them is, "that when the fee in its original creation is only to. continue to a certain period, the wife is to hold her dower, and the husband his curtesy, after the expiration of the period to which the fee charged with the dower or curtesy is to continue; but that when the fee is originally devised in words imparting a fee simple or fee-tail absolute and unconditional, but by subsequent words is made determinable upon some particular event, then, if that particular event happens, the wife's dower and the husband's curtesy cease with the estate to which it is annexed. Such appears to be the distinction established by the foregoing cases. But a different doctrine as to cases of the latter description seems to have been laid down in the case of *Buckworth* v. *Thirkell,* determined in the King's Bench. He then proceeds to state the facts in that case, and the unanimous opinion of the court that the husband was entitled to his curtesy, and he concludes his observations by referring to several authorities, in which much useful learning on the subject of his note may be found, but there is not a word of condemnation or even disapproval of the decision. His own opinion is only to be inferred from the context.

Gibson, C. J., of the Supreme Court of Pennsylvania, in *Evans* v. *Evans, supra,* in commenting upon their note, says, "I cannot apprehend the reason of his (Mr. Butler) distinction in the note to Coke Litt., 241, between a fee limited to continue to a particular person at its creation, which curtesy or dower may survive,

and the devise of a fee simple, or a fee-tail, absolute or conditional, which, by subsequent words, is made determinable upon some particular event, at the happening of which curtesy or dower will cease. In *Doe* v. *Hutton,* Lord Alvanly spoke doubtingly of it; and, without absolutely dissenting from it, refused to give it his approbation. He says, "the system of estates at common law is a complicated and artificial one; but still is a system complete in all its parts and consistent with technical reason. But how to reconcile to any system of reason, technical or natural, the existence of a derivative estate, after the extinction of that from which it was derived, was for him to show; and he has not done it."

The plaintiff's counsel, besides the cases cited by him and heretofore commented upon, relied upon the decisions in *Adams* v. *Burkman,* 1 Page, 31, and *Willes* v. *Willes,* 28 Barb., 538. In the former case the widow was held not entitled to dower, because her children did not take as heirs of their father, but as contingent legatees of the proceeds of the sale of land converted into money—and in the latter case the Court followed the opinion of Chancellor Kent, and was one of the very few authorities to be found in support of the plaintiff's position.

From all the authorities to which we have had access we are of opinion the defendant is entitled to dower in the land in controversy.

We have not overlooked the fact that the defendant has no right, as widow, although entitled to dower, to hold the possession of the land against the plaintiff before the assignment of her dower, but that point was not taken by the plaintiff's counsel in his argument before us, and from the known astuteness and acumen of the learned counsel, we must assume that it did not escape his attention, but that it was his purpose, in order to prevent another proceeding against his client "*in forma pauperis,*" to have the whole matter in controversy determined in this action. This can be done under the equitable jurisdiction of the Superior Court over the subject of dower, which we do not think has been taken away by giving cognizance of such matter to the clerk of that court.

In *Campbell* v. *Murphy*, 2 Jones Eq., 357, C. J. Pearson says the jurisdiction of the courts of equity over the subject of dower is well established; and in *Jones* v. *Gerock*, 6 Jones Eq., 190, a bill in equity to have dower assigned was entertained, and a decree for dower rendered—but the application to the equity jurisdiction of the courts should, as a general rule, contain some equitable element. But inasmuch as in this case the parties are before the court, and a determination of the whole matter in controversy will prevent a circuity of actions, which it is the policy of The Code to encourage, we have, therefore, deemed it proper to take cognizance, in this case, of the defendant's equitable right to dower and decide the case upon its true merits. The judgment of the Superior Court must, therefore, be reversed, and this opinion certified to that Court that proper proceedings may be had to assign to the defendant her dower in the land described in the complaint.

Error.                  Reversed.