SETTLE v. SETTLE.

(Filed May 25, 1906).

*Sale of Real Estate to Make Assets—Petition—Parties—Infants—Appearance by Next Friend—Judgments—Collateral Attack — Equitable Jurisdiction — Retention of Cause—Executors and Administrators—Final Settlement—Breach of Administrator's Bond.*

1. Where, pursuant to agreement, the children of a decedent joined in an *ex parte* petition to the Superior Court asking for the sale of realty to pay debts, for the purpose of preserving the personalty, and where the infant children were represented by their next friend, regularly appointed, who was their brother-in-law, the parties were properly before the court, and the Superior Court, in the exercise of its equitable jurisdiction, could grant the relief.

2. Infants without general guardians, may appear by their next friend, appointed in the manner prescribed by the statute, and judgments rendered in such proceedings, otherwise valid, are binding upon and conclusive of the rights of infants, in the same manner and to the same extent as persons *sui juris.*

3. The Superior Court possesses the same equitable powers and jurisdiction when not limited by statute, formerly exercised by the courts of equity.

4. Where the Superior Court assumes jurisdiction of a proceeding to sell the land of a decedent for the purpose of preserving the personality and subjecting the land to the payment of the debts, it may retain jurisdiction and make a final settlement of the estate, provided such final relief comes within the scope of the petition, or is not so foreign thereto as to make the decree "outside the issue."

5. Where a petition of the children of a decedent asked that the land be sold so as to preserve the personalty and that the proceeds be applied to the payment of debts and that the personal estate be distributed among the children of the deceased according to their respective rights, so that each one would have a fund at interest, and prayed that the court decree a conversion of the real estate into money, and direct that the payment of debts be put thereon, and that the personal estate be distributed to those entitled thereto, and for general relief, *held,* that the petition authorized the court to make a full settlement and distribution of the estate of the decedent.

6.  In courts of general jurisdiction, such as the Superior Court, all presumptions are made in favor of the regularity of judgments and the jurisdiction of the court to render them and recitals of jurisdictional facts are conclusive when attacked collaterally.

7.  A recital in a decree of the Superior Court that the "cause had been retained for other and further orders," constitutes a part of the record and can be contradicted only by a direct attack, either by an independent action, or by a motion in the cause.

8.  Where in a proceeding to sell land to make assets and thereby preserve the personalty, a decree was entered confirming the sale and directing the administrator, who was the purchaser, to charge himself with the proceeds, etc.; and at a subsequent term, a petition was filed praying for the distribution of the personalty and a decree was entered reciting that the cause had been retained for further decrees and ordering a reference to ascertain the value of the personalty, etc.; and at a subsequent term, the referee filed his report, and at the same term the administrator filed a report to which was attached an itemized account of his administration, a final decree approving the report of the administrator was within the jurisdiction of the court, and as conclusive as if upon a petition for account and settlement in the probate court.

9.  Where the amount due by an administrator to an infant distributee was fixed and judgment rendered therefor, the breach of the bond was in not paying the amount into court, or upon the arrival at full age to the distributee.

ACTION by the State on relation of Floreda Settle against Thomas Settle, Administrator of Mrs. Mary Glen .Settle, deceased, and others, heard by *Judge G. S. Ferguson* at the February, 1906, Term of the Superior Court of GUILFORD. From a judgment for the plaintiff, the defendant appealed.

*E. J. Justice* and *Z. V. Taylor* for the plaintiff.
*King & Kimball* for the defendant.

CONNOR, J. This cause is before us upon appeal from a judgment rendered upon the pleadings and exhibits attached thereto.    The plaintiff, upon the complaint and answer,

treating the facts set forth in the answer as insufficient to establish a plea in bar, moved His Honor for judgment that defendant administrator render an account of his administration, and from a judgment accordingly, defendant appealed.

In considering the appeal we must, therefore, treat the allegations in the answer as being true. The uncontradicted facts as set forth in the complaint and admitted in the answer, are: Mrs. Mary A. Settle died intestate, domiciled in Greensboro, N. C., March, 1895, leaving surviving her children, heirs-at-law and distributees, the defendants, Thomas Settle, Mrs. Nettie Beall, Mrs. Mary O. Sharpe, Mrs. Lizzie Boyd, Douglas Settle, Mrs. Caroline Wilkes, Mrs. Julia Holt, David Settle and the relator, Miss Floreda Settle, the last four being infants. The defendant Thomas Settle, on March 11, 1895, was appointed administrator of the deceased and qualified by executing a bond in the sum of $20,000 with the other defendants as sureties thereto. Mrs. Settle, at the time of her death, was possessed of certain personal estate consisting of bank and other stock, choses in action and household furniture, aggregating about $5,000; a policy of insurance on her life for $5,000, and was seized and possessed of a dwelling house in the city of Greensboro of the value of $7,000, aggregating about $17,000. The personalty went into the hands of the defendant administrator. On the 8th day of July, 1895, the said children and their husbands entered into an agreement as follows: "We, the undersigned heirs-at-law of Mary A. Settle, deceased, hereby agree that it is best for the interest of all and particularly for the minor children of said Mary A. Settle, to sell the home place, which is not capable of division in kind, and put the payment of the debts on that fund, and thus leave the personal estate for division amongst the children, which may be an interest bearing fund for said minors, and to this end we agree that our names may be joined in any petition or suit

which may be necessary to carry out our said views, as witness our hands, this 8th July, 1895." Signed by each of the said children and distributees and their husbands. Pursuant to the said agreement, Messrs. Dillard & King, attorneys, practicing in the courts of said county, at the August Term, 1895, in behalf of all of said children, distributees and heirs-at-law, the said infants being represented by B. C. Sharpe, Esq., theretofore. appointed their next friend, filed a petition as follows:

"To the Honorable, the Judge of the Superior Court of the County and State aforesaid: Your petitioners above named respectfully show unto the court:

1. That Mary A. Settle, the widow and relict of the late Judge Settle, departed this life in Greensboro, N. C., intestate in the year 1895, and leaving her surviving the following children and heirs-at-law, to-wit: (naming them), the last four infants without guardians, who are represented in this petition by B. C. Sharpe, specially assigned by the clerk as next friend to protect their interests in this suit, leaving at her death a considerable personal estate, consisting of household and kitchen furniture, money on hand, bank stock and choses in action, in all amounting to about $........., and leaving her house and lot in the city of Greensboro (describing same), and being the house and lot on which Mary A. Settle had her domicile at the time of her death, and at the time of her death said intestate owed but four debts and they of small amounts, except that which she was owing to her two sons, Thomas Settle and Douglas Settle, for moneys advanced by them for her during her widowhood.

2. That your petitioners believe the personal estate is sufficient to pay the debts of the intestate and all the costs and charges of administration, and so likewise they feel sure the said house and lot if sold prudently, will produce enough to pay the same, and leave the personalty for distribution

SETTLE *v.* SETTLE.

to and amongst the next of kin and heirs according to their respective rights therein.

3. Your petitioners show that they have given much reflection as to what is best to be done, having regard to the interests of all concerned and particularly to the interests of those of your petitioners who are under full age, and their deliberate conclusion is that the best thing to be done is to sell the land and devote the proceeds to the payment of the debts and take the personal estate and distribute the same among the children according to their respective rights, some of them having been advanced to their full share therein and others partially, and still others not at all, and so believing, your petitioners have executed a written agreement to be joined in this *ex parte* petition indicating their views on the subject, and hereunto annex the same to be taken as a part of their petition.

4. That if the personal estate be applied to pay the debts, the land will have to be divided, which cannot be done, in kind, so as to make the shares valuable, and the consequence then will be, that the personal estate being all gone, the infant children aforesaid will have no distributive interest (share) to bear interest for them and no homestead to live at, when if the debts be put on the land, each one of said infants will have a fund at interest to be used in their support.

5. Your petitioners are advised that your Honor has the jurisdiction to decree a conversion of the said house and lot into money and the application of the proceeds to the payment of the debts, so as then to provide for the children and especially the infants, so that their interests in the personal estate may be productive and helpful in their support as aforesaid.

Wherefore your petitioners pray your Honor to decree a charge and conversion of the real estate of the late Mary A. Settle into money and direct that the payment of the debts

be put upon the same, and that the personal estate be distributed in money to and amongst those entitled thereto, and such other and further relief in the premises as may be just and right."

We have set forth in full the foregoing petition to the end that its scope and purpose may appear.

At the same term of the court a decree was entered in said petition by His Honor, *Henry R. Bryan, Judge Presiding,* directing a sale of the said house and lot for the purpose set forth in the petition and appointing Dr. W. P. Beall commissioner to make the sale, he being the husband of one of the petitioners. Specific directions were given in regard to the manner of conducting such sale, directing a report at the next term of the court. It is also provided in said decree that Thomas Settle and Douglas Settle, either or both, be allowed to bid for the said property, if they so desire.

At the December Term, 1895, commissioner made report that he had sold the said land in accordance with the terms of the decree, and that Thomas Settle was the last and highest bidder therefor at the price of $7,000, and that said sum was a full and fair price therefor. He further reported that the amount had not been paid, but that as it was the purpose of the suit to appropriate the sum to the payment of debts, he recommends that the said amount be charged to the said Thomas Settle, as administrator, and be by him accounted for in the final settlement of said estate. At the same term, His Honor, *Judge Starbuck,* presiding, a decree was made confirming the said sale and directing the defendant administrator to charge himself with the proceeds and apply and account for the same in due course of administration in paying the debts. "That he account for and distribute the excess, if any, of said purchase money, together with the personal estate, among all of the next of kin, making equality among the said next of kin by a due accounting for advancements among them, if any such there be." There was in this

decree no direction that the cause be retained for other and further orders.

At the May Term, 1896, of said court a petition was filed in the said cause reciting as follows: "This cause having been retained for further proceedings and decrees, the above named parties, your petitioners, would respectfully show unto the court, that Thomas Settle, as administrator of Mary A. Settle, deceased, has so far administered the estate of said decedent as to ascertain that there would be a surplus consisting of some cash, stock in Bank of Guilford of the par value of $600, in the Piedmont Bank of $500, the Wakefield Hardware Co. of $1,000 at par value, and the household furniture, estimated at say $1,000, for distribution among those entitled after an account shall have been taken of advancements to and among certain of the heirs and distributees of the said Mary A. Settle." Said petition further stated that the value of said personal property was unknown to the petitioners, and that if the same would be allotted to and among them, it would be necessary to ascertain such values in order that an equitable distribution thereof may be made and the value of the household property also ascertained, which after being ascertained may be distributed in kind among those entitled. That petitioners, Nettie S. Beall and Mary S. Sharpe, and it may be others, have been advanced in amounts to a sum in excess of their respective distributive shares. The petitioners asked that a reference be ordered and that, notice duly given, testimony be taken as to the value of such stocks and other property and also the amount advanced, with direction that the referee find the facts in regard thereto and report the same to this court, and that the cause be retained. Upon said petition, His Honor, *Judge Coble,* presiding, an order was made in the following language: "This cause having been retained for further orders and decrees and now coming on for such, it is ordered and decreed by the court that the same be referred to Col.

J. T. Morehead to take testimony as to the value of said
property and the amount advanced to said distributees and
to find the facts relative thereto and report the same to the
court."

That at May Term, 1897, Colonel Morehead filed his re-
port, together with the testimony taken by him, finding that
the stock in the Piedmont Bank was worth $512.50; Bank
of Guilford, $600; Wakefield Hardware Company, $850,
and the furniture, $450; that the advances to Mrs. Beall
and Mrs. Sharpe are equal to their interest in the estate.
To this report are the words, "no allowance asked for." At
the same term the defendant, Thomas Settle, administrator,
made the following report: "The undersigned would re-
spectfully report unto the court, that the total assets which
have come into his hands, or should have come into his
hands, as administrator of Mary Settle, deceased, are shown
in the statement hereto attached, and he has paid out in ac-
cordance with the credits shown by said statement; that
the balance in his hands for distribution is $8,015 as per
said statement hereto attached." Filed and verified June
16, 1897. To said report is attached an itemized statement
showing receipts of $17,900. In this statement the admin-
istrator charges himself with the face value of the stocks
and $1,000 for the furniture. He afterwards deducts $150
and $550, being the excess of said valuation as found by
Colonel Morehead, charging himself with $12.50, being the
excess in value of the Piedmont Bank stock. In this ac-
count, every item mentioned in the complaint, except $179,
which is only referred to generally, is accounted for. The
complaint alleges upon information and belief that there
is about $5,000 which she is entitled to have defendant ac-
count for, but does not further specify the basis for said alle-
gation. The account contains an itemized statement, with
dates, etc., of each item. No commissions are charged by
the administrator. At the same term a decree was made

by His Honor, *Judge Allen,* presiding, reciting that the report of Colonel Morehead and of Thomas Settle, administrator, had been duly filed, and that no exceptions had been made thereto, and that the same is in all respects confirmed, and, further, "from this report and that of the said administrator, it is found and adjudged by the court that the net sum in the hands of the administrator for distribution on all accounts, after charging himself with all proper sums which he is chargeable with, and allowing himself all proper credits, is $8,015; that this sum is divisible among the seven children in equal shares, to-wit: ..................
It is further found by the court that Nettie Beall, wife of W. P. Beall, and Mamie Sharpe, wife of B. C. Sharpe, have been advanced sums more than their respective distributive shares, and are not entitled to any part of the assets of said deceased. It is found by the court that the share due each of the seven first above. named children is $1,145."

Upon the foregoing facts, His Honor, *Judge Ferguson,* upon said motion adjudged: "That there has been no final settlement of the estate of Mrs. Mary A. Settle, deceased, by Thomas Settle, administrator, and that the proceedings entitled 'Thomas Settle · *et al., ex parte,*' referred to in the answer, were at an end when the land referred to in the petition was sold by the commissioner, the sale reported and confirmed, and an order was made directing the commissioner to execute title to the purchaser; and that the other and further proceedings therein the court had no jurisdiction or power under the pleadings filed in that case to make; and that the decree of His Honor, *O. H. Allen, Judge,* made in 1897, which said decree is set out as a part· of the answer of the defendants, is void, and is no estoppel upon the plaintiff in this action." He thereupon directed that the cause be referred to Colonel Morehead to take and state an account, etc.

The questions which lie at the threshold of this appeal are:

1. Did the court have jurisdiction of the persons and of the subject matter which passed into the judgment of May Term, 1897? 2. Is the said judgment outside the issue or foreign to the matter set forth in the petition? If the plaintiff's contention, in respect to either question, be correct it is manifest that His Honor's judgment should be affirmed. In regard to the first question, the parties voluntarily, and in the orderly way prescribed by law, came into and submitted such matters and things, rights, etc., as are set forth in the petition, to the jurisdiction of the court. It cannot be doubted that they set forth a statement of facts sufficient to "challenge the attention of the court and set the judicial mind in motion." As they agreed upon the pertinent and material facts in regard to which the prayer for relief was based there was no reason why they should not have invoked the equitable powers of the court by petition. The infants were represented by their next friend, appointed upon application to the clerk as the statute directs. The husbands of the *femes covert* were joined as petitioners. That infants, without general guardians, may appear by their next friend, appointed in the manner prescribed by the statute, is not controverted nor is it denied that judgments rendered in such proceedings, otherwise valid, are binding upon and conclusive of the rights of infants, in the same manner and to the same extent as persons *sui juris*. *Tate v. Mott,* 96 N. C., 19; *Tyson v. Belcher,* 102 N. C., 112. The person appointed to represent the infants was their brother-in-law, whose wife had exactly the same interest in the property and estate as did the infants. There is no suggestion that he was not, in all respects, a proper person to be appointed. The parties were therefore properly before the court.

Prior to the adoption of the Constitution of 1868 equitable rights and remedies, in accordance with the general rules of procedure existing in the Court of Chancery in England, except as modified by statute, were administered in this

State by the Judge of the Superior Courts of Law and Equity, sitting as chancellor. While jurisdiction was given the Courts of Pleas and Quarter Sessions to take probates of wills, grant letters testamentary and of the administration of estates of deceased persons, entertain petitions for sale of lands to pay debts, audit accounts of executors, administrators and guardians and do many other acts in the administration and settlement of estates, it was always held, by this court, that the jurisdiction of courts of equity to entertain bills for the settlement of estates, etc., was not withdrawn. *Ruffin, C. J.,* in *Barnawell v. Threadgill,* 40 N. C., 86, in disposing of an objection to the jurisdiction of the court of equity because a remedy at law had been given by statute, said: "But that is a cumulative legal remedy, not so effectual, in many cases, as that in equity, when accounts may be taken, all parties in interest brought before the court, and the decree enforced, not only by execution, but by process for contempt. Besides, the rule of construction is settled that statutes, which merely give affirmative jurisdiction to one court, do not oust that previously existing in another court. There is nothing incongruous in concurrent jurisdictions." That a court of equity had jurisdiction to entertain and dispose of a bill brought either by creditors, legatees or distributees, known as administration suits prior to 1868, is shown by numerous cases in our reports and was uniformly recognized in all of the States of the Union, unless expressly deprived of it by statute. By the Constitution of 1868 a radical change was made in the distribution of judicial power. The distinction between courts of law and of equity was abolished and one form of action prescribed. The jurisdiction formerly vested in the county courts in regard to the settlement of estates was conferred upon courts of probate and the procedure prescribed styled a special proceeding. The change in the jurisdiction and introduction of the new method of procedure gave to the bar and the courts much

concern.  It was found that suits brought to the regular term should have been brought before the clerk or *vice versa.* The court made several, not altogether successful, attempts to "mark the line" dividing the jurisdiction of the courts. *Tate v. Powe,* 64 N. C., 644, and other cases.  The General Assembly passed several curative statutes which were sustained by the court.  *Bell v. King,* 70 N. C., 330.  The convention of 1875 conferred upon the General Assembly the power to distribute the jurisdiction conferred upon the several courts established by the Constitution and those which should by the power conferred be established by the Legislature, etc.  Article 4, section 12.  Pursuant to this grant of power the General Assembly at the session of 1876-77 enacted that, in addition to the remedy by special proceeding, actions against executors, etc., may be brought originally in the Superior Court in term time, and in all such cases it should be competent for the court in which said action shall be pending to order an account to be taken by such person as the court may designate and to adjudge the application or distribution of the fund ascertained or to grant other relief as the nature of the case may require.  The court in *Haywood v. Haywood,* 79 N. C., 42, construed this statute and held that it conferred upon the probate and superior courts concurrent jurisdiction in suits for the settlement of estates. *Pegram v. Armstrong,* 82 N. C., 326; *Fisher v. Trust Co.,* 138 N C., 90.  That the Superior Court, under our judicial system, possesses the same equitable powers and jurisdiction, when not limited by statute, formerly exercised by the courts of equity, is not controverted.  In this case the clerk would have had no power to order the sale of the land under the statutory proceeding provided for by section 68, Revisal. The purpose of the petition was to sell the realty, not because the personalty was insufficient to pay the debts, but for the purpose of preserving the personalty which produced an income and subjecting the realty to the payment of the debts.

This relief could have been afforded only by a court having jurisdiction, hence it was necessary to apply to such court for relief. Counsel concede that the cause was properly constituted in the Superior Court of Guilford County for the purpose of having the land sold to create a fund for the payment of the debts,. and that the sale was in all respects regular. They attack the decrees of May Term, 1896, and May Term, 1897, for that first, the purpose of the petition, to-wit, the sale of the land having been accomplished the court had no further power or jurisdiction in the premises, but that if it had such jurisdiction it was lost by the decree of *Judge Starbuck*, of December Term, 1895, which decree it is contended was final. It is elementary learning that when a court of equity once takes jurisdiction, although invoked by reason of some ancillary equity, it will proceed to dispose of the entire matter in controversy. "It is a distinctive characteristic of a court of equity that it may adapt its decrees to all varieties of circumstances which may arise and may vary, qualify, restrain and model the remedy so as to suit it to mutual and adverse claims, controlling equities and the real and substantial rights of all the parties." 5 Enc. Pl. and Pr., '958. "It is to be recollected that it is a fundamental principle of courts of equity to make as complete a decision upon all points embraced in a cause as the nature of the case will admit, so as to preclude, not only all further litigation between the same parties, but the possibility of the same parties being at any future period disturbed or harrassed by other parties claiming the same matter, as well as of any danger that may exist of injustice being done to other parties, who are not before the court, in the present proceedings." Danl. Ch. Pr., 635. "It is the constant aim of courts of equity to do complete justice, by deciding upon and settling the rights of all persons interested in the subject matter of the suit, so that the performance of the decree of the court may be perfectly safe to those who are compelled

to obey it, and also that future litigation may be prevented."
Story's Eq. Pl., 72.   It was the uniform practice of courts
of equity, their jurisdiction being invoked by reason of some
equitable right or some relief which the law courts had
no power or machinery for administering, to dispose of the
entire case, developed in the pleadings.   *Pearson, J.,* in
*Simmons v. Hendricks,* 43 N. C., '84, says: "A court of
equity will not take jurisdiction simply to put a construc-
tion on a deed or devise, because that is a pure legal question.
But when a case is properly in a court of equity, under some
of its known and accustomed heads of jurisdiction and a
question of construction incidentally arises, the court will
determine it, being necessary to do so in order to decide
the cause."

Discussing the origin and extent of the jurisdiction of
courts of equity, or, more accurately speaking, courts having
equity jurisdiction to entertain administration suits, Mr.
Pomeroy says: "The rule has already been stated, as one
of the foundations of the concurrent jurisdiction, that where
a court of equity has obtained jurisdiction over some portion
or feature of a controversy, it may and will in general, pro-
ceed to decide the whole issues and to award complete relief,
although the rights of the parties are strictly legal, and the
final remedy granted is of the kind which might be afforded
by a court of law."   Pomeroy Eq., sec. 231.   The principle
as applied to administration suits is thus stated: "Although
the legislation of most of the States has either expressly or
practically taken the general jurisdiction of administration
from the courts of equity and has conferred it upon courts
of probate under minute statutory regulation, still, whenever
a court of equity takes cognizance of a decedent's estate, for
any special purpose or to grant any special relief, not within
the power of the probate court   *   *   *   it has been held in
many States that the court of equity, having thus acquired
a jurisdiction of the estate for this particular purpose may

and should, notwithstanding the statutory system, go on and decree a complete administration, settlement and distribution of the entire estate in the same manner in which it would have proceeded under the original jurisdiction of chancery prior to the legislation." *Ib.*, 235. "While the original jurisdiction of equity over the subject of administration in general is thus abolished in so many States, the power to interfere for some special and partial purpose or to grant some special and partial relief in the course of the administration and settlement of decedent's estates, exists in all the commonwealths as a part of the general functions belonging to equity courts." After classifying the States, he says: "In some of the States belonging to the second division, as described above, where the general equity jurisdiction over administration is not absolutely abolished, but is rather suspended or dormant, when such suit is brought to obtain a particular relief which necessarily operates to aid some pending administration, or to remove some obstacle from its completion, the rule is settled, in accordance with a familiar principle, that the court having thus acquired a partial jurisdiction over the subject matter, or for a partial purpose, will go on and decree full and final relief. The court will, therefore, in addition to the particular remedy demanded, take control of the entire administration; will even withdraw it from the probate court, if already begun therein, and to that end will enjoin all further proceedings before such tribunal, and will order a final accounting and decree a final settlement and distribution whether the deceased died testate or intestate." Pomeroy Eq., sec. 351, citing a large number of cases, including *Simmons v. Hendricks, supra.* In *Sanders v. Soutter,* 126 N. Y., 193, the jurisdiction being apportioned very much as with us, it is said: "A court of equity possesses jurisdiction, concurrent with the surrogate's court to entertain an action or proceeding for an accounting of executors. It seems to be the rule that the Supreme Court, in the exercise

of its discretion, will decline to take jurisdiction of an action for an accounting by the representatives of the estate of a deceased person, unless special facts and circumstances are alleged showing that the case is one requiring relief of such a nature that the surrogate's court is not competent to grant it, or some reason assigned, or facts stated, to show that complete justice cannot be done in that court. But when a court of equity obtains jurisdiction of the matter for some special purposes   *   *   *   or to grant some other special relief, not within the power of the probate court, it may and very frequently does, retain the case for all purposes and decree a complete administration, settlement and distribution of the entire estate." *Judge Story,* in *Pratt v. Northan,* 5 Mason (C. C. R.), 95, says: That when for any adequate reason the court of equity takes jurisdiction in the settlement of estates, the parties and the cause being once in the court, they should not be turned over to a suit at law for "final redress." And for the purpose of complete justice it became necessary to conduct the whole administration and distribution of assets under the superintendence of the court of chancery when it once interfered to grant relief in such cases. *Chancellor Kent,* in *Thompson v. Brown,* 4 Johns., Ch. 619 (637), announces this same doctrine. This court, in *Pollard v. Slaughter,* 92 N. C., 72, in an action for the recovery of land involving the construction of a will, held that the defendant was entitled to dower, although it had not been allotted. *Ashe, J.,* said that although jurisdiction to allot dower was given the clerk in a special proceeding, the Superior Court would direct the allotment. "This can be done under the equitable jurisdiction of the Superior Court over the subject of dower, which we do not think has been taken away by giving cognizance of such matter to the clerk of the court.   *   *   *   But inasmuch as in this case, the parties are before the court and a determination of the whole matter will prevent a circuity of

actions, which it is the policy of The Code to encourage, we have, therefore, deemed it proper to take cognizance, in this case, of the defendant's equitable right to dower and decide the case upon its merits." The judgment directed the Superior Court to proceed in that cause to have dower allotted. In special proceedings it was found after long experience necessary to pass the Act of 1887, Rev., sec. 614, which makes it the duty of the Superior Court and confers jurisdiction when a special proceeding for any ground whatever shall be sent to the judge upon the request of either party to proceed to hear and determine all matters in controversy, unless it shall appear to him that justice would be more cheaply and speedily administered by sending it back to the clerk. This statute has been construed in a number of cases. *Elliott v. Tyson,* 117 N. C., 116; *Springs v. Scott,* 132 N. C., 548. We therefore conclude that the court had jurisdiction of the persons and of the subject matter involving the final settlement of Mrs. Settle's estate, provided that such final relief came within the scope of the petition or was not so foreign thereto as to make the decree of May Term, 1896 and 1897, "outside the issue." It is conceded "that a decree or judgment in a matter outside of the issue raised by the pleadings is a nullity and is no where entitled to the least respect as a judicial sentence." *Jones v. Davenport,* 45 N. J. Eq., 77. The principle is stated in *O'Reilly v. Nicholson,* 45 Mo., 160, and approved by the author in Van Fleet on Collateral Attack, sec. 750. It was sought to attack the decree collaterally because it was outside the issue. The court said: "But the decree is not a nullity. It is true the petition hardly lays the foundation for the relief given; but the court had jurisdiction both of the subject matter of the petition and the decree. The object of the petition was for authority to raise money out of the land to pay the legacies, and the court added to the order sought, substantially, an election by the legatee to take the legacy

and release the land, with an order of carrying out that election. The court had a right to do both, and if the petition did not lay a foundation for both, the decree is simply erroneous and cannot be impeached collaterally. A judgment, though informal, even to the extent of granting a relief not contemplated in the petition, when parties are before the court and the relief is within its jurisdiction, is not void." The test appears to be whether the questions which passed into the decree were presented to the attention of, and within the jurisdiction of the court—the parties being before the court. The question was discussed in *Reynolds v. Stockton,* 34 N. J. Eq., 211, and in the same case on a writ of error in 140 U. S., 255. In passing upon the constitutional provisions requiring full faith and credit to be given records of other States, *Brewer, J.,* says: "The requirements of that section are fulfilled when a judgment rendered in a court of one State, which has jurisdiction of the subject matter and of the person and which is substantially responsive to the issues presented by the pleadings or is rendered under such crcumstances that it is apparent that the defeated party was in fact heard upon the matter determined." *Bunker v. Bunker,* 140 N. C., 18. This renders necessary an examination of the language of the petition. It is the work of one who, as shown by the records of this court and a long career at the bar, won a reputation second to none as an equity lawyer and draftsman. The petition informs the court of the condition of Mrs. Settle's estate, the kind and character of the property, the number, status and condition of her children with respect to the estate. The petition is filed after the execution and by authority of an agreement made some months after Mrs. Settle's death. The court is informed in respect to her indebtedness and the reason why the interests of the petitioners would be promoted by a sale of the real estate for the payment of the debts and the distribution of the personalty among the children. They say

that "they have given much reflection to what is best to be done, having regard to the interests of all concerned and particularly to the interests of those of the petitioners who · are under full age. The petition states that their father is dead; that some of the children had been advanced to their full share, others partially, and others not at all; that the real estate described was the home of their mother and cannot be divided otherwise than by sale; that the personalty consisted of money on hand, bank stock, chosès in action," etc. In view of these and other facts set forth, they wish to have the realty sold, and the court direct the proceeds to be applied to the payment of the debts, "and take the personal estate and .distribute it among the children according to their respective rights, so that each one of said infants will have a fund at interest to be used in their support." We think that these facts clearly suggest to the court a desire and purpose to have the proper proceedings, orders, etc., necessary to have a full statement and distribution of Mrs. Settle's estate made in that proceeding. This construction is sustained by the prayer for relief, that the court decree a change and conversion of the real estate into money and direct that the payment of the debts be put upon the same, and that the personal estate be distributed in money to those entitled thereto, and for general relief.

It will be observed that the stocks and household furniture had not been sold—their purpose · evidently being to divide this property in kind. The reasons which moved them to this course are manifest. The entire course of conduct, both of the parties and counsel, who, we are informed on the argument, were charging no fee for services, shows a purpose to make a family settlement of their mother's estate, in a way which required the aid and function of a court of equity. The realty being sold by the husband of one of the petitioners as commissioner, it appeared that one of the sons had, as the decree permitted him to do, purchased at a

price satisfactory to the others. Thereupon a motion in the cause is made for a reference to ascertain the value of the stocks, household furniture and the advancements. The reference was made to James T. Morehead, a member of the bar, who took evidence which he reported to the court with his conclusions, all of which is confirmed without exception. If the court was not to make the distribution, why take these steps? In the regular statutory order of administration, the administrator would have sold the stocks and furniture and accounted for the proceeds. It is evident that the parties wish to preserve this personalty. It will be noted that Mr. Morehead bases his conclusions, in respect to the value of the furniture, upon the testimony of Mr. Sharpe, the next friend of the infants, and Dr. Beall. He also reports that their wives have been fully advanced. This report coming in, the administrator files a report to which is attached an itemized account of his administration, and at the same Term, May, 1897, the final decree is made by *Judge Allen.* In the light of the authorities, the language and general scope of the petition, we are of the opinion that the final judgment is within the jurisdiction of the court and the averments and prayers of the petitioner. It was so treated by the parties, the counsel and the court. The plaintiff says that conceding this to be true, the court lost jurisdiction by the decree of December Term, 1895, which she insists is final. It is true that there is no direction at the conclusion of the decree retaining the cause. While this is usual it is not necessary, if in truth, the cause was retained by the court. The record shows that at the May Term, 1896, which was the second term, following December, the motion in writing recites that the cause had been retained for other and further orders and the decree directing the reference contains the same recital. The decree of May Term, 1897, recites: "This cause coming on to be heard and for further orders and directions," etc. It will be noted that the judg-

SETTLE *v.* SETTLE.

ment of December Term, 1895, makes no direction in respect to cost. It is sometimes difficult to adopt from the authorities a satisfactory definition of a final decree. Mr. Freeman, after noting the difficulty in fixing upon a satisfactory definition, says: "But no order or decree which does not preclude further proceedings in the court below should be considered final. A decree is interlocutory which makes no provision for cost and in which the right is reserved to parties to set the cause down for further directions not inconsistent with the decree already made, and so is a decree which contains a provision for a reference of certain matters, and that all further questions and directions be reserved until the coming in of the report of the referee." Freeman on Judgments, sec. 29. For the purpose of passing upon this phase of the case it is important to note the well settled rule that in courts of general jurisdiction, such as the Superior Court, all presumptions are made in favor of the regularity of judgments and the jurisdiction of the court to render and that recitals of jurisdictional facts are conclusive when attacked collaterally. Therefore the recital in the decree of May Term, 1896, that the cause had been retained for other and further orders constitutes a part of the record and can be contradicted only by a direct attack, either by an independent action or a motion in the cause. This principle is illustrated in *Harrison v. Hargrove,* 109 N. C., 346. There the decree recited that the summons had been served on the defendants. *Shepherd, J.,* said: "The decree recited that personal service of the summons had been made on the plaintiffs (defendants in the original proceeding) devisees, and being unable to attack it collaterally they moved in the original cause," etc. It was held that "the record reciting the necessary jurisdictional facts, such a decree is voidable only." *Doyle v. Brown,* 72 N. C., 393; *Millsaps v. Estes,* 137 N. C., 535; Black on Judgments, sec. 273. In this proceeding, therefore, we must, upon the recitals in the record,

hold that the cause was retained for further orders and that the decree of December Term, 1895, was not final. If the plaintiff wishes to attack the record she may do so by a direct proceeding for that purpose. We find no suggestion in the complaint that in filing the original petition, or any motion or order made in the progress of the cause there was any fraud. The plaintiff's motion for a reference is based upon the contention, and His Honor so decided, that the judgment of May Term, 1897, was void for that the court had no jurisdiction or power under the pleadings to render the judgment. For the reasons set forth herein, we are of the opinion that there was error in this ruling. There is no allegation in the complaint to surcharge and falsify the final account. The judgment was rendered June, 1897. The relator of the plaintiff reached her majority November 15, 1899. This action was brought February 1, 1905. It was the duty of the defendant administrator to pay the amount found to be due the relator into court on June 16, 1897. He says that he has paid her in full, setting out an itemized statement of the amounts and dates of payment. This, of course, is pleaded as a payment and is not included in the judgment of May Term, 1897. The parties are entitled to have the question of payment passed upon by reference or otherwise. It would seem that. as the amount due plaintiff was fixed by the judgment, the breach of the bond, if the amount due has not been paid, was at that time, but as the plaintiff was an infant the statute did not begin to run against her until she was of full age, after which time she had three years within which to sue the sureties on the bond. Rev., sec. 395, sub-sec. 6. In *Edwards v. Lemmond,* 136 N. C., 329, where the authorities are reviewed, the suit was against the administrator for an account and settlement. If His Honor was correct in holding that the judgment of May Term, 1897, was void the conclusion followed that plaintiff was not barred. As we hold that the

filing and approval of the account was, in this action, as conclusive as if upon a petition for account and settlement in the probate court, the statute runs from that date. The amount due was fixed and judgment rendered therefor, the breach of the bond therefore was in not paying the amount into court or, upon the arrival at full age, to the plaintiff. The judgment of His Honor must be reversed to the end that the parties may proceed in such manner as they may be advised. If the plaintiff so desires, we see no reason why she may not amend her complaint, or move in the original cause upon proper averments. What effect the lapse of time will have upon her rights in that respect is not before us for decision.

Error.

WALKER, J., did not sit on the hearing of this appeal.